186 So.2d 580

**STATE of Louisiana**

**v.**

**Nick CHRISTIANA.**

**No. 48057.**

May 2, 1966.

Rehearing Denied June 6, 1966.

Jack Wasserman, Washington, D. C., G. Wray Gill, Sr., George M. Leppert, George W. Gill, Jr., New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Charles R. Ward, Chief Asst. Dist. Atty., James Alcock, Asst. Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

HAMITER, Justice.

A bill of information filed in the Criminal District Court for the Parish of Orleans charged in two separate counts that on September 1, 1965, within the jurisdiction of such court, one Nick Christiana (the defendant herein) did (1) "* * * wilfully and unlawfully become an accessory after the fact, in that the said NICK CHRISTIANA, after the commission of a felony, to-wit Armed Robbery, by one THOMAS WILLIAMS, did harbor, conceal and aid the said THOMAS WILLIAMS, knowing and having reasonable

ground to believe, that he, the said THOM- AS WILLIAMS had committed the said felony and with the intent that the said THOMAS WILLIAMS might avoid and escape trial, conviction and punishment, * * *" and (2) "* * * illegally and intentionally procure, receive and conceal a thing of value, to-wit: Six Hundred and Thirty-Nine * * * ($639.00) Dollars in United States Currency, belonging to the Beneficial Finance Co. a corporation authorized to do business in the State of Louisiana which said thing of value had been theretofore the subject of a theft, under circumstances which indicate the said NICK CHRISTIANA knew, or had good reason to believe, that the aforesaid thing of value was the subject of a theft, * *." With respect to the second count, the information was later amended to allege that the "thing of value" was $635.

Tried by a jury, the accused was found guilty as charged under count 1 and guilty of receiving stolen things valued at $655 under count 2.

Thereafter, the judge sentenced the defendant to serve at hard labor in the state penitentiary for a period of five years on the first count and for a period of three years on the second count, the sentences to run consecutively.

From his conviction and sentences the defendant is appealing, he relying for a reversal on eight perfected bills of exceptions.

Bill No. 1 was taken to the court's overruling defendant's pretrial motion to suppress certain evidence ($635 in cash and a pistol) alleged to have been seized through an illegal entry, arrest and search, and also to suppress other evidence secured by means of a search warrant, it being appellant's contention that the affidavit supporting the warrant was based on information obtained in the earlier illegal search. Bills Nos. 2 and 3 were reserved when the court overruled defendant's objections to the introduction of such evidence during the course of the trial. Since these three bills involve the legality of the initial entry, arrest and search, they will be considered together.

The circumstances surrounding the mentioned entry, arrest and search are as follows: On September 1, 1965, at about 2:00 o'clock in the afternoon, Officers Flint and Fields of the Police Department of New Orleans received a report that an armed robbery had just taken place at the Beneficial Finance Company located in such city. Thereupon, these officers, having been informed earlier in the week (by a confidential informer) that Thomas Williams, who was out on bond for a previous armed robbery, owed quite a bit of money to the bondsman and was planning to "make a big score" to fulfill his obligation, took with them pictures of Williams and two others when going to the finance company office to investigate the robbery.

Williams was identified from his picture by the employees of the finance company as the man who had just held up them at gun point. The officers then arranged for a "pick-up order" on Williams to be broadcast. Also they, being aware that Williams was armed, returned to the police station at Tulane Avenue and South Broad Street to secure shot guns to assist in effecting his arrest.

While the officers were at the police station, within one-half hour of the commission of the robbery, they received information through a police broadcast that Williams had just entered a building at 534 South Broad Street, this being the location of defendant's bail bonding business and is situated across the street from such station. (An account of the robbery and a description of Williams, his clothes, etc., had been broadcast over a taxicab intercommunication system. The information that the suspect had gone into the South Broad Street address was furnished to the police by a cab driver who had picked up a passenger fitting the description of Williams and had discharged him at such address.)

Officer Flint, with Officers Field and Perrot following, then ran across the street, entered the bonding company building, and asked of an employee the whereabouts of Williams and Christiana. They were directed to an office in the rear of the structure. The door to that office was closed but unlocked. Without knocking, or announcing the presence of officers, Flint pushed open the door and immediately informed Williams (while pointing a shot gun at him) that he was under arrest.

Williams was sitting at a desk in the office, he facing the door, and had leaned forward as Flint entered. The defendant was seated in a chair in front of the desk, his back to the door, with his right hand extended over the desk and holding paper currency. On the desk under his hand were two $10 bills.

Flint was primarily watching Williams, but he saw defendant "take his right hand and shove this money into his right pants pocket." Seconds later Perrot entered and handcuffed Williams. A search of Williams disclosed that he had no money or gun on his person, although there were eight .380 caliber automatic cartridges in his shirt pocket.

At first, Williams and the defendant refused to divulge information about the money or any gun. Rather, the latter denied that he had received any sums from Williams. Whereupon the officers searched the desk at which Williams was seated and therein they found a loaded .380 caliber automatic pistol used by him in robbing the finance company.

Following further questioning of Williams and the defendant as to the ownership of the currency and the pistol, the latter was placed under arrest and searched. In his

right pants pocket was $635. This money and the pistol were the principal subjects of the motion to suppress.

In connection with bills of exceptions Numbers 1, 2 and 3 the defendant urges that the police officers' "unannounced" entry into his private office was illegal and, hence, the subsequent arrest and search of him were unlawful. He further contends that even if the entry was legal, his arrest was illegal because made without probable cause and, therefore, the evidence obtained by a search of his person after his unlawful arrest was inadmissible.

■ The argument that the entry made by the unannounced opening of an unlocked door to his private office was illegal is based on the following italicized portion of LRS 15:72 reading: "To make an arrest, a private person, if the offense be a felony committed in his presence, or a peace officer with a warrant or in cases of felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be *if after he has announced his purpose, he is refused admittance.*" (Emphasis ours)

It is conceded that initially the officers had neither a search warrant nor an arrest warrant. Therefore, the first question presented is whether the evidence secured must be excluded because the officers, even though they had probable cause to make an arrest and search of Williams, failed to comply strictly with the above emphasized statutory provision.

In People v. Maddox, 46 Cal.2d 301, 294 P.2d 6, the Supreme Court of Caifornia considered that question, it having been raised under a California enactment which is almost identical with ours. Therein the court said: "It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, *they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose.* Read v. Case, 4 Conn. 166, 170; see, Restatement, Torts, § 206, comment d. Without the benefit of hindsight and ordinarily on the spur

of the moment, the officer must decide these questions in the first instance. * * * We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains." See also State v. Smith, 37 N.J. 481, 181 A.2d 761 (commencing at page 769) and State v. Carr, 2 Conn. Cir. 247, 197 A.2d 663. (Emphasis ours)

The same issue was again presented in People v. Ker, 195 Cal.App.2d 246, 15 Cal. Rptr. 767. In that case the Maddox decision, which recognized that there are exceptions to the statutory provision that officers must announce their presence and explain the purpose before forcible entry, was approved. On certiorari to the United States Supreme Court the holding in the Ker case was affirmed. See 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 726.

People v. Maddox was also approved by the California court in People v. Potter, 144 Cal.App.2d 350, 300 P.2d 889, involving an arrest for armed robbery, and in People v. Ramsey, 157 Cal.App.2d 178, 320 P.2d 592, involving the commission of an abortion.

The principles involved in the mentioned California cases were sanctioned by the Supreme Court of Pennsylvania in Commonwealth v. Negri, 414 Pa. 21, 198 A.2d 595. There police officers had entered, unannounced, the hotel room of the accused in New York, he being sought on a murder charge. It was urged that the entry was illegal as being violative of a New York statute similar to ours. But the Pennsylvania court said: " * * * assuming that the officers' entry, by use of a key obtained from the hotel clerk, is the legal equivalent of a 'breaking in,' it has been recognized from the early common law that a 'breaking in' without prior announcement is permissible in executing an arrest under certain circumstances. See, 4 Wharton, Criminal Law and Procedure, §§ 1624, 1625 (1957), and Ker v. California, supra. Here justification for the officers' mode of entry was emphatically present. Involved was a well-armed fleeing felon whom the officers had every right to believe would not be taken without a fight. That they were in serious peril cannot be questioned. The danger would be increased had entrance been demanded or purpose announced. A decision had to be made quickly on the basis of the facts then before them. Under such circumstances, the method of entry was not unreasonable when viewed either under state law or constitutional standards."

In State ex rel. Naylor v. Walker, 206 F.Supp. 544 a United States District Court in Louisiana was considering the admissibility of evidence obtained after a forcible

entry. The court stated: "The fact that the arresting officers broke through the door in the process of making the arrest does not make the arrest illegal. While there seem to be no Louisiana cases directly at point, I can find nothing in the jurisprudence of Louisiana to indicate in any way that such a method of making an arrest, under appropriate circumstances, would be illegal. In the case of Williams v. United States, 9 Cir., 273 F.2d 781, the Court held that even though a California Statute provided for forced entry *after* a demand for admittance had been made and denied, the fact that no demand for admittance was made prior to the forced entry did not violate the petitioner's constitutional rights. The Court held there that if the officer's peril would have been increased or the arrest frustrated had he demanded entrance first, then an immediate forced entry was justified. This Court now adopts the reasoning stated in the Williams case and the cases therein cited, and holds that under the circumstances of this case, the forced entry made by the arresting officers was entirely justified and legal."

This language was quoted with approval by us in State v. Aias, 243 La. 945, 149 So.2d 400. See also State ex rel. Miles v. Walker, D.C., 222 F.Supp. 975.

We are of the opinion that the reasoning set forth and the legal principles enunciated in the foregoing cases are sound. And based thereon, we think that the entry in the instant case was not illegal, although unannounced.

Undoubtedly, under the circumstances shown above the officers had, to say the least, reasonable ground to fear that an announcement to Williams of their presence and of their intended entry would place not only themselves in grave peril but quite possibly Christiana as well. (It should be remembered that at the time of entry Officer Flint had no reason to believe that defendant Christiana was other than an innocent third person whose life might be endangered by forewarning Williams of the presence of the police.) Such announcement could also be reasonably expected to give Williams time to dispose of or hide the money and gun, as well as to permit him to escape through the rear door of the building. Consequently, the entry and almost simultaneous arrest of Williams were legal, and the ensuing search of his person and of the drawer of the desk toward which he was leaning constituted a lawful search.

█ Likewise, we are of the opinion that there was probable cause for arresting the defendant as an accessory after the fact. The officers testified at the trial that Christiana had at first asserted that the gun (when found in the drawer) belonged to him; however, thereafter he admitted that it did not. Originally, also, he denied receiving any money from Williams, stating that the latter had come to his office for the sole purpose of borrowing $20, he ap-

parently not realizing that the officers had seen his outstretched hand containing a large number of bills which he immediately "stuffed" into his pocket. In fact, the defendant himself admitted at the trial that he had told the officers that he had not received any money from Williams.

Clearly, such actions on the part of the accused constituted probable cause for the officers to believe that Christiana was sheltering and helping Williams to avoid detection of his implication in the robbery and, thereby, aiding him to defeat his arrest. (For a definition of probable cause see Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, and State v. Aias, supra.)

■ Inasmuch as the officers' entry and the subsequent arrests were legal, the ensuing searches, made in connection with such arrests, were also lawful. And the fruits thereof were properly admitted into evidence.

In reaching this conclusion we have carefully studied the authorities cited and relied on by the defendant. We do not find our decision to conflict with them in any way. All are distinguishable on the circumstances surrounding the respective entries and arrests.

In Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed. 1332, the United States Supreme Court held that it need not decide whether the requirements of the law of the District of Columbia (from whence the case arose) would admit an exception justifying noncompliance with an announcement provision, because "The Government makes no claim here of the existence of circumstances excusing compliance." In fact, the Miller case was so distinguished by the court in the later decision of Ker v. California, supra.

Again, in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, in ruling inadmissible evidence obtained after a forced entry, the court stated: "Here as in Miller, the Government claims no extraordinary circumstances—such as imminent destruction of vital evidence, or the need to rescue a victim in peril—see 357 U.S. at 309, 78 S.Ct. 1190, 1195—which excused the officer's failure truthfully to state his name before he broke in."

For somewhat similar reasons the decisions from the federal circuit Courts of Appeal cited by defendant are inapplicable. In some, there is no discussion as to whether there are exceptions to the general rule, the government apparently not having urged exceptional circumstances. In others it was found that under the facts shown no probable cause or exceptional circumstances appeared.

For the foregoing reasons we find no merit in·bills of exceptions Nos. 1, 2 and 3 which, defense counsel conceded, are the most serious bills presented for our consideration.

Bill of exceptions No. 4 was reserved to the court's overruling defendant's pleading styled "Motion in arrest of judgment, to set aside verdict and for a new trial". In said pleading the defendant sets forth five alleged errors in the proceedings. They are treated hereinafter in the order in which they appear.

1—The error alleged here is the same urged in bills Nos. 1, 2 and 3, it being that the court improperly admitted evidence obtained through an illegal entry, arrest and search.

2—The evidence, it is contended, does not establish defendant's guilt of being an accessory after the fact beyond a reasonable doubt. The contention relates only to the sufficiency of the evidence. It is well settled in our jurisprudence that this court cannot pass upon the evidence's sufficiency, this being a matter exclusively in the province of the jury. See State v. White, 247 La. 19, 169 So.2d 894, and the cases cited therein.

3—This assignment addresses itself primarily to the sufficiency of the evidence to sustain defendant's conviction for the charge of receiving stolen money. However, it is also argued that the verdict is not responsive to the information because the defendant was charged with receiving $635 in currency, whereas the verdict returned recited that he was guilty of receiving stolen things valued at $655. This slight differ-

ence could not affect the sentence which might be imposed; and in view of the total value involved it is our opinion that the discrepancy is so small as to be immaterial and that no prejudice resulted to defendant as a consequence thereof.

Further, under this assignment, the defendant complains of the court's charge to the jury relative to the standard of mentality and conduct required of him and to a presumption of guilty knowledge based on his possession of the stolen money. But no objections were made to the charge when given by the judge. Under these circumstances, we cannot review the complaint. See State v. Bickham, 236 La. 244, 107 So. 2d 458, State v. Bueche, 243 La. 160, 142 So.2d 381, and LRS 15:391.

4—Next, the defendant asserts that it was error for the judge to submit both counts of the information to the jury, since they involved the same offense; and that his imposing sentence on the two counts violated the double jeopardy provisions of the state and federal constitutions. In support of such assertion he cites State v. Ugarte, 176 La. 54, 145 So. 266, State v. Milanovich et al. v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed. 773, and Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed. 407.

The cases cited are inapplicable. Unlike this case, the defendants in the mentioned decisions were charged in separate counts

with theft (and bank robbery) and with receiving the stolen goods. In them it was held that receiving the stolen goods was a necessary ingredient of, and included in, the crime of theft (and robbery). Here the accused was charged with being *an accessory after the fact* of armed robbery and also with receiving the stolen goods. (In this jurisdiction an accessory after the fact cannot be charged and convicted as a principal. LRS 14:23–14:25). Clearly the two offenses are not identical; one is not merely a lesser grade of the second crime; nor is it necessarily included in the other.

Moreover, distinctly different acts of this defendant were relied on as evidence to convict on the two separate offenses. Thus, receiving the $635, knowing or having good reason to believe it was stolen, constituted the crime denounced in the second count; whereas, the accused's permitting the gun to be concealed by Williams in his desk drawer, his telling the officers that the pistol belonged to him when they located it, his denying that he had received money from Williams and asserting that the latter was in his office merely to obtain a loan, were obviously acts committed to aid the said Williams to avoid detection and arrest as is set forth in the first count. See State v. Calvo, 240 La. 75, 121 So.2d 244 and LRS 15:279.

■ 5—The remaining error alleged in defendant's motion is that remarks of the prosecutor in his closing statement to the jury were prejudicial. But no objection was urged at the time the allegedly improper remarks were made. Consequently, there is nothing for us to review. See State v. Odom, 247 La. 62, 169 So.2d 909, and the cases cited therein.

Incidentally, because of this conclusion, we likewise find no merit in defendant's bill of exceptions No. 8. This bill was taken to the court's refusing to permit to be filed and to be considered a defense counsel's "affidavit" of his recollection of the allegedly prejudicial remarks. Inasmuch as we are precluded from considering the complaint that prejudicial remarks were made it would serve no useful purpose to admit the "affidavit".

■ Bill of exceptions No. 5 was reserved when the trial court overruled defendant's "Amended Motion for a New Trial" in which he alleged that there was no legal evidence to support a verdict of guilty. There is no merit in the bill. All of the facts and circumstances recited above were shown by the evidence. Additionally, it was proved that the amount stolen from the finance company was the same sum as found in defendant's right pocket and on his desk, less a small amount accounted for by payment to the taxi driver. Besides, Williams testified that when he entered the bonding company office he told Christiana that he was "hot", that he had committed an armed robbery, and that the police would

probably be "all over the place" in a short time. Manifestly, there was some evidence to sustain the conviction.

 Bill No. 6 was taken to the overruling of a supplemental motion in arrest of judgment wherein defendant urged that it was improper for the state to charge two separate crimes in different counts in the same bill of information. This complaint is adequately answered by the trial judge in his per curiam as follows: "The defendant, at arraignment, and during the trial, was represented by able and experienced counsel and did not move the Court to 'Quash the Information' because of misjoinder of allegations of the two crimes alleged in the Information, nor did they move the Court to force the District Attorney to elect on which count of the Information he intended to proceed, but elected to go to trial on both counts of the Information.

"The proper time to raise objection to any misjoinder or to compel the District Attorney to elect to proceed on count I or count II of the Information is by way of a motion to quash or to elect before the trial begins.

"It comes too late after trial and verdict.

"LRA–R.S. 15:226." See also Blankenship, 231 La. 993, 93 So.2d 533 and State v. Richard, 245 La. 465, 158 So.2d 828.

After his conviction and before sentence the defendant moved for his release on bond pending imposition of sentence. When the motion was denied Bill No. 7 was reserved. LRS 15:85 prohibits admitting to bail a person *after conviction of a felony,* unless a sentence of *less* than five years at hard labor has been imposed, in which event he is then entitled to bail pending his appeal and until final judgment. Having been convicted of two felonies the defendant was not entitled to bail, and the judge's ruling was correct. Thereafter, he was sentenced on one count to five years at hard labor. He did not then reapply for bail pending the appeal. However, even if he had, under the clear provisions of the cited statute the granting of it was not permissible.

For the reasons assigned the conviction and sentences are affirmed.