SANDERS, Justice
(dissenting).
In the execution of an arrest warrant held by another law enforcement agency for a narcotics offense, police officers entered the defendant’s apartment to arrest Cleon Mixon, whose car was parked in front of the apartment. They arrested the fugitive in the kitchen and in a search found narcotic equipment in a drawer and on top of the refrigerator in the kitchen, a few feet from where the arrestee was standing at the time of arrest. Some of the equipment was coated with narcotic substances. After seizure of this contraband, the officers also arrested the defendant for possession of narcotics.
The trial judge overruled the motion to suppress the seized contraband. The ma *429 jority has reversed, and set aside the conviction. I dissent.
The Fourth Amendment of the United States Constitution, as well as the Louisiana Constitution, prohibits unreasonable searches and seizures. It is well established, however, that a warrantless search of the place of arrest, if incident to a lawful arrest and reasonable in scope, does no violence to the constitutional guarantee. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856; James v Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 685; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.
The rule allowing a search incident to an arrest is justified by the need to seize weapons and prevent the destruction of evidence. Preston v. United States, supra.
In the present case, the officers had reliable information that a warrant had issued for the arrest of Cleon Mixon, This fact is undisputed. Hence, both the entry into the house and the arrest were legal. C.Cr.P. Arts. 213, 224.
The officers seized all of the narcotic equipment in the kitchen, where the arrest occurred. When the officers entered the kitchen, Mixon was moving away from the area of the sink and drawers with a drink in his hand. The evidence is somewhat conflicting as to whether Mixon was standing by the sink or kitchen table at the actual moment of arrest. In my opinion, it makes no difference. The defendant acknowledged he had been by the sink earlier.[1] Accepting either location, the officers found the contraband in the same room, where he had moved about immediately before the arrest.
In a well-written Per Curiam, the trial judge correctly disposes of the factual and legal issues arising from the search:
“I believe it was reasonable upon completing the arrest of Cleon Mixon and under the circumstances of the arrest, considering what he did when first seen and what he was observed doing at the time the officers entered the kitchen, gave the officers the right at that moment to not only search the defendant but search the area where the defendant had been standing in an attempt to ascertain whether he had attempted to secrete any narcotics or narcotic paraphernalia in that area of the kitchen. As such, I believe that the officers had reasonable grounds to make the search and seize the evidence as they did in this case. This further coupled with the track marks on the arms of both this defendant and her co-defendant amply indicated, especially because of the recent inflamed *431 marks on the arms of the defendant Roach, that there was narcotic activity being engaged in in this house. The search was no more than an incidental one to the arrest of Mixon. The defendants cannot complain of narcotics found in their house in the near vicinity of a person wanted for a felony and being aided by them in his attempt to avoid arrest by permitting him not only to come to that house but to receive his mail there. They cannot now say that because a fugitive was captured in their house that any narcotics confiscated in connection with that arrest on their premises is in violation of their constitutional rights.
“Further, as the officers stated, to leave at that time in an attempt to get a search warrant would have permitted Cleon Mixon and any other persons engaged in any illegal activity in this house to destroy the evidence by flushing same down the toilet. It should be remembered that the officers were not on an exploratory search of the defendant’s house, but their prime, main and sole function at the time of knocking on the door was to ascertain if the fugitive was in the house and if he was to place him under arrest and turn him over to the proper authorities.
“It was the action of Mixon and other persons in the house in running about when the officer was seen as well as Mixon’s attempt to hide from the officers which prevented the officers from merely placing him under arrest and taking him off. It was their duty and obligation as officers to see whether this wanted fugitive had secreted any illegal narcotics or paraphernalia in the kitchen after his attempt, upon seeing them, to move out of sight in hopes that he was not recognized. Reasonable police work would require no less.”
Even under the restrictive rule of Chimel v. California, supra, handed down on June 23, 1969, the search in the present case fell within proper limits. The United States Supreme Court said:
“When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer’s safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is *433 arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee’s person and the .area ‘within his immediate control’ — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
“There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself.”
The Chimel decision, however, is not -retroactive. Hence, under the more liberal rule accepted as applicable by the majority, the reasonableness of the search and seizure in the kitchen is beyond question. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.
The present holding conflicts with our decision in State v McIlvaine, 247 La. 747, 174 So.2d 515 (1965), in which we upheld a search of broad scope in a narcotic search and established a rule of reason for such searches. There, we said:
“The law has not ordained hard and fast rules for the determination of reasonableness. The facts and circumstances of each case must be judged separately, with wide latitude accorded the trier of facts. That determination should not be overturned unless there is clear error. With these basic considerations in mind, we think it is entirely probable that inferences and conclusions from facts may be made in a narcotics case which may conceivably offend standards of reasonableness in another case. The very nature of narcotics transactions, the places where they occur and the parties involved dictate that a different standard should apply if common sense and reason are to play a part in the determination of reasonableness.”
The majority has based its judgment on other grounds. First, it holds that the later search of other rooms in the apartment converted the search into a general exploratory search of the entire apartment. Second, it holds that a search incidental to the arrest was unauthorized since Mixon was in the apartment of a third party and did not have “control and charge of the apartment.”
The first basis for the decision is easily answered. No contraband or evidence was seized in the other rooms of the apartment. As we have observed, the seizure took place in the kitchen, only a few feet from the arrestee. The defendant suffered no trial prejudice from the later search of other rooms. Hence, the search of those rooms is not an issue in this case.
*435 The majority likewise erred in holding that when a person is arrested on the premises of a third person, no incidental search of the immediate surroundings is authorized. Apparently, the majority takes the word “control” found in some of the decisions and equates it to ownership or lease rights. Such an equation, in my opinion, is unwarranted.
The United States Supreme Court has rejected the importation of property concepts into search and seizure law. In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the Court held that a person “legitimately on the premises” of a third party had standing to complain of an unconstitutional search. In so doing, the Court made it clear that the refinements of property law had no application to search and seizure. Property rights are irrelevant to the purpose of a search incidental to an arrest. Such a search is designed to discover weapons and incriminating evidence in the area immediately surrounding the person arrested. The ownership of the surrounding area is immaterial.
More specifically, the Court in Chimel v. California, supra, defined within his immediate control to mean the area in which the arrestee might gain possession of a weapon or destructible evidence.
In the present case, the record reflects that the arrestee frequented this apartment and received his mail there. That he lived elsewhere, and had no lease on the premises should not deprive the officers of the right to search. He was there as a fugitive with the consent of the owners.
The search of a defendant’s premises incident to the arrest of another person is not new to this Court. In State v. Christiana, 249 La. 247, 186 So.2d 580 (1966), this Court upheld the seizure of a pistol in a search of a desk in defendant’s office incident to the arrest of a felon there. The present case conflicts with that holding. See also Clifton v. United States, 224 F. 2d 329, cert. denied 350 U.S. 894, 76 S.Ct. 152, 100 L.Ed. 786.
It is common knowledge that narcotic offenders attempt to destroy the evidence against them. See State v. Johnson, 250 La. 85, 193 So.2d 794 (1967). The restrictive decision here affords the house occupant the opportunity for such destruction. In so doing, it greatly handicaps the enforcement of the narcotics laws. Unfortunately, the decision adds no substantial protection to the right of privacy. Under the circumstances to which the holding applies, the privacy, of the occupant has already been broken by the officers in making an arrest. With no adequate basis in legal theory and no substantial benefit to the right of privacy, the decision represents an unwarranted departure from the jurisprudence of this Court.
For the reasons assigned, I respectfully dissent.

. Tr. 201-202.