*437 ON REHEARING
FOURNET, Chief Justice.
This case is now before us for consideration on rehearing granted on the application of the State in order to review the majority decision of this court, reversing the conviction and sentence of the defend and[1] on the ground that the trial court erroneously overruled defendant’s motion to suppress certain evidence based on the contention that it was secured as a result of an unreasonable search and seizure of defendant’s residence without a search warfant.
The facts of the case, insofar as pertinent to this matter, as reflected by the record may be succinctly stated, as follows : Officer Lampard had been informed by Lieutenant Giarrusso of the narcotics division of the New Orleans Police Department that he had been contacted by Lieutenant Norman Paxton of the Baton Rouge police, who advised him that there was an arrest warrant outstanding for Cleon Mixon [2] for forging a narcotic prescription, and also advised him he was receiving his mail at 1014 Terpischore, the defendant’s residence. A surveillance was set up of that house and on the afternoon of April 17, 1967 Mixon’s car was seen parked in front of the residence, in which was seated his invalid mother and her dog, whereupon Officers Lampard and Soule went to the front door of defendant’s residence while Officer Lauman went to cover the rear door. In response to Lampard’s knock, he and Soule were admitted into the front door by one of the women who lived there and immediately observed Mixon looking down the hallway from the kitchen door, and then ducking out of view; the officers then ran to the kitchen and grabbed Mixon,[3] who was seen drinking a chocolate drink, placing him under arrest. Officer Lampard let Lauman in through the back door and then searched Mixon, finding nothing. Thereafter the officers began a search of the entire house, beginning in the kitchen, resulting in the discovery by Soule of certain narcotic paraphernalia in a kitchen drawer near the sink and a bottle cap was located by Lauman in a tray on the top of the refrigerator which he thought had been used as a “cooker”, and upon finding “track marks” on the arms and legs of the two women, they were placed under arrest for possession of narcotics.[4]
*439 The basic issue presented for our consideration is if the search of the house, under the circumstances hereinabove referred to, was within the permissible scope of the Fourth Amendment.
Although the question of the reasonableness of a search depends upon the total facts and circumstances of a case, the question remains as- to - what criteria will these facts and circumstances be applied. It necessarily follows that they must be considered in the light of the established safeguards afforded by the Fourth Amendment.[5]
The guarantee of an individual against unreasonable intrusions into their private lives requires that police officers must, wherever reasonably practicable, secure a search warrant in order to search and seize articles from an individual’s premises. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828. The obvious reason for this rule allows the individual the protection of having a judge, rather than the police officers, determine the justification for a search and what limitation should be placed upon such activities. The United States Supreme Court in the case of McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, pointed out,. “This was not done to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.”
To conduct a search or seizure without a warrant has always been strictly limited. There is no question that when an arrest is made, that it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that he might conceal or destroy that is connected with the crime for which he was arrested. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. The courts have further recognized the reasonableness of the arresting officer to search the immediate area where the crime was being committed and under the control of the person arrested to find and seize things *441 connected with the crime as its fruits or as the means by which it was committed. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877; Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. However, except under such limited situations, there is no justification for a search without the authority of a search warrant. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889; Preston v. United States, supra; Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663. As aptly observed by the United States Supreme Court in the latter cited case, “ * * * There must he something more in the way of necessity than merely a lawful arrest(Emphasis added.)
We think the evidence on the motion to suppress clearly supports the conclusion reached in our original opinion that the search of the defendant’s house was unreasonable. The arrest of Mixon therein was used by the arresting officer as a pretext for their search of the premises in order to obtain evidence in support of their suspicion of narcotics traffic existing therein. This is made clear by Officer Lampard who admitted they had neither personal knowledge nor any reliable information of any narcotics violations in defendant’s house prior to their entry therein, and when questioned as to why they did not wait until such time as Mixon left the house to arrest him, unhesitatingly responded, “Because we wanted to go into this house.”
The case of State v. Christiana, 249 La. 247, 186 So.2d 580, which is relied upon by the State is inapposite from a factual as well as a legal standpoint and, therefore, is not controlling in the case at bar. I|i that case the defendant was arrested and charged as an accessory after the fact under the following circumstances: Officers were pm-suing one Thomas Williams,[6] an armed felon fleeing the robbery of a finance company, having been identified by employees of the finance company from photographs, and who had been reported to have been seen entering the defendant’s hail bond office which was located across the street from the police station. Immediately upon entering the defendant’s office, one of the police officers saw Williams seated at a desk and the defendant, with his right hand outstretched over the desk holding a large sum of bills which he shoved into his right pants pocket, and observed his other hand over two $10 bills on the desk. Williams was immediately placed under arrest and his person searched, re *443 vealing eight .380 caliber automatic cartridges in his shirt pocket, but no gun or money. A search of the desk, toward which he was leaning, revealed the .380 caliber pistol he had used in the robbery, the ownership of which was at first claimed by the defendant, then denied. Following further questioning of Williams and the defendant as to the ownership of the currency and the pistol, the defendant was placed under arrest and searched, resulting in the production of $635 from his pants pocket that the oficers had seen him place there. The money and gun were the principal subjects of the motion to suppress. This court concluded under this factual situation the officers had probable cause for defendant’s arrest and the search was a reasonable one to secure evidence incidental to and in connection with the arrest for a crime that had just taken place.
For the reasons assigned our original judgment reversing the conviction and sentence of the defendant is reinstated and made the final judgment of this court.
SUMMERS, J., dissented.

. The defendant, Judith K. Roach, was charged by bill of information with possession of a narcotic drug.

. At the time of the trial, Oleon Mixon was confined to Angola Penitentiary for having obtained narcotics by fraudulent prescription.

. There is a conflict in the testimony as to whether Mixon was by the sink or by the table when the officers entered the kitchen.

. The testimony is in conflict as to whether the women were placed under arrest immediately after the discovery of the *439 narcotie paraphernalia in the kitchen or after a search of the entire house revealed a bottle of Saccharin tablets the officers thought were narcotics.

. The Fourth Amendment provides : “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, hut upon prohahle cause, supported hy Oath or affirmation, and particularly describing the place to he searched, and the persons or things to ha seised.” (Emphasis added.)

. The officers had been informed by a confidential informer that Williams, then out on a bond for armed robbery, was planning “to make a big score” to obtain money to pay bis bondsman.