378 So.2d 1369 (1979)
STATE of Louisiana
v.
James DAZET.
No. 64566.
Supreme Court of Louisiana.
December 13, 1979.
Rehearing Denied January 28, 1980.
*1370 Ferdinand J. Kleppner, Grisbaum & Kleppner, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Jacob J. Amato, Jr., Asst. Dist. Attys., Gretna, for plaintiff-appellee.
SUMMERS, Chief Justice.[*]
Defendant James Dazet was charged by bill of information in two counts with possession of marijuana with intent to distribute and that he did knowingly and intentionally possess cocaine with intent to distribute, violations of La.Rev.Stat. 40:966 and 40:967, respectively. Dazet initially pled not guilty and filed a motion to suppress the evidence, which was denied. Relying on a plea bargain he then withdrew his guilty plea and tendered a plea of guilty to possession of cocaine with intent to distribute on the condition that he retain the right to contest the trial judge's adverse ruling on the motion to suppress. With this understanding the charge of possession of marijuana was dismissed. After ascertaining that Dazet's plea was free and voluntary, the trial judge sentenced him to imprisonment at hard labor for five years.
On this appeal defendant contends that 1) the trial judge erred in denying his motion to suppress the evidence, and 2) the sentence of five years was excessive.
Assignment 1: Here the defense claims the trial judge committed reversible error by refusing to grant defendant's motion to suppress evidence alleged to have been illegally seized as a result of an unconstitutional search of defendant's apartment. The gravamen of this motion rests in the allegation that the affidavit submitted to support the search warrant was based upon information furnished by a confidential informant without setting forth facts to establish the reliability of the informant; consequently the accuracy of the information furnished by the informant was also in question.
The contested affidavit set forth that on April 1, 1977, while working in illegal drug traffic on the east bank of Jefferson Parish in an undercover capacity, Agent Grannan met Frank Torres. Torres stated that a friend of his had a large quantity of cocaine and marijuana and that he could sell Grannan any amount he wanted. It was then arranged that Grannan would meet Torres at the parking lot of Kaleb's Lounge at approximately six o'clock that night.
Grannan conveyed this information to Agent J. Nelson, who made arrangements for Grannan to give $450 in recorded bills to Torres at the rendezvous. Other agents would then follow Torres to his source of supply.
At six o'clock that night seven narcotic agents established a surveillance of the parking lot. Shortly thereafter Grannan met Torres and gave him the money, and Torres told Grannan he was going to his source and would meet Grannan at 6:45 at the same location with the drugs. Accordingly Torres departed in a 1975 Pontiac Grand Prix with no license plate.
Agents on surveillance followed the vehicle as it proceeded to 1525 Aztec Street in Metairie, Louisiana, where the driver left the vehicle and entered the building. At *1371 approximately 7:05 Torres was seen to leave the apartment, enter his vehicle, and proceed to Kaleb's parking lot. There he met Grannan and sold him one-quarter ounce of cocaine, after which Torres informed Grannan that his "connection" had a quantity of Thai-Sticks (Thailand Marijuana) in addition to large amounts of cocaine. They then parted company.
Shortly thereafter narcotic agents began an investigation into the activity of the occupant of Apartment A at the 1525 Aztec Street address. They learned from a confidential source that this apartment was occupied by Dorothy Gardner, a white female, and was frequented by James Dazet. Agents then checked the Jefferson Parish Sheriff's Office Record Section. That source disclosed that Dazet had been arrested in the past for five felony offenses and was then on probation until 1979 as a result of a conviction for distribution of marijuana.
The next day, April 2, 1977, Agent Nelson ascertained from Agent Renton of the Jefferson Parish Sheriff's Office Narcotics Division that Renton had a reliable confidential informant whose information had been proven reliable through independent investigation, who was familiar with the activity in Apartment A of the apartment house at 1525 Aztec Street. The confidential informant had stated to Renton that on numerous occasions while in that apartment he had observed large amounts of marijuana and cocaine there, and his most recent visit to the apartment was the preceding eveningApril 1, 1977. He further stated that on several occasions he had purchased drugs from Dazet there, but he did not wish to purchase drugs from Dazet for evidence purposes because he feared for his own safety and well-being as well as that of his family.
On this information the trial judge issued the search warrant on April 2, 1977. The search of Dazet's apartment followed. Marked bills used in the purchase by Grannan, a quantity of marijuana, cocaine and various drug paraphernalia were seized.
At a pretrial hearing on the motion to suppress, Agent Nelson of the Sheriff's Narcotic Squad was called as a defense witness. He testified that the 1525 Aztec Street address was an apartment building with a common entrance to three apartments designated respectively as A, B and C. Previously a warrant was obtained on April 1, 1977, he said, to search apartment "C" occupied by Tom Lee. Lee, he said, was the confidential informer referred to in the affidavit supporting the warrant issued for the search of Apartment A, occupied by Defendant Dazet. Nelson was in and out of Lee's apartment when Lee informed on Dazet, but relied principally on Renton's version of Lee's statement because Renton was present at all times while Lee divulged his narcotic transactions with Dazet. Defense counsel's interrogation was designed to establish that Lee's reliability as an informer had not previously been verified. And the surveillance team which had followed Torres the previous day did not enter the apartment at that time or see which apartment Torres entered to obtain the narcotics from his "connections".
Nelson also restated the facts set forth in the affidavit concerning the check of the records on Dazet whereby it was learned that he had previously been arrested for narcotic offenses and that Dazet was then on probation for distribution of marijuana.
Thereafter Renton was called as a defense witness. He corroborated the testimony of Nelson and verified the information contained in the affidavit. Renton also said that after furnishing the information concerning Dazet, Lee called him and said that Dazet told him he had seen the Drug Enforcement Administration files which indicated that he was an informant. As a result Lee "became petrified" and had since refused to cooperate with the narcotic agents.
In Lee's testimony as a defense witness he repudiated the testimony of the agents and the information contained in the affidavit to the effect that he, the confidential informant, had purchased narcotics from Dazet and had seen large amounts of marijuana *1372 and cocaine in Apartment "A" at 1525 Aztec Street. While admitting that he had been charged with possession of marijuana, that he knew Dazet, and that the officers offered not to charge his wife, he denied that any "deal" was made to furnish law enforcement with information about Dazet. Nevertheless he did admit on cross-examination that he told the officers that someone was staying in Apartment A with Dazet, that he had been in Dazet's apartment and had seen marijuana there, while steadfastly denying that he said Dazet had sold drugs to him. He also denied that Dazet had threatened him.
The motion to suppress was denied.
In his per curiam to this assignment the trial judge wrote:
"The affidavit stated that there existed `a reliable confidential informant whose information had been proven reliable through independent investigation and who was familiar with the activity in the apartment' in question. The affidavit then recited the factual foundation for believing the informant. It seems that the language quoted above does imply that the informant had supplied reliable information in the past, but even assuming that it does not, such a statement is not necessary. The United States Supreme Court in United States v. Howard [Harris], [403 U.S. 573,] 91 S.Ct. 2075 [, 29 L.Ed.2d 723] (1971) held that though an affidavit `did not aver that the informant had previously given correct information, an averment of previous reliability is not essential when supported, as here, by other information.' The affidavit at hand supplied such other information by containing ample factual foundation for believing the informant.
"Secondly the defendant complains that the search was unannounced. The transcript on the hearing on the motion to suppress makes no mention of the fact that the agents did not announce their presence. But even the assumption that they have not would not invalidate the search because the defendant was with the agents at the time of the entrance and in fact opened the door from the outside for them. In addition, according to State v. Christiana [249 La. 247,] 186 So.2d 580 (Sup.1966), a search is still legal even though officers do not announce their presence where officers have reason to fear that the announcement would give an occupant time to dispose or to hide evidence and to escape. Here the agents knew the defendant had a live-in girlfriend and had reason to fear a disposable of the drugs upon knocking."
We agree with the ruling of the trial judge. The reliability of the information furnished by Lee concerning Dazet's possession and distribution of drugs is made manifest by the facts and circumstances set forth in the affidavit.
While it does not appear from the affidavit that the confidential informant (Lee) has furnished reliable information in the past, details of the events leading to a drug transaction took place in plain view of the narcotic agents. Those details do supply evidence of reliability. The affidavit set forth that Torres arranged to make the sale, set up the meeting place, and asserted his "connection" had ample stocks of marijuana and cocaine. Following this disclosure he proceeded to the "source" at 1525 Aztec Street under surveillance. He entered the three-apartment building and exited with the drug, proceeded to the prearranged meeting place and sold the drug to an undercover agent, all under strict surveillance of a number of narcotic agents. One of them signed the affidavit.
These facts do establish that contraband drugs were located in one of the three apartments at 1525 Aztec Street. A search and seizure of Apartment C that very night eliminated that apartment as a possible repository of "a quantity of Thai-Sticks (Thailand Marijuana) in addition to a large amount of cocaine." Only Apartments A and B remained, therefore, as possible sources of the drugs.
On the basis of information obtained from the confidential informant, the agents began an investigation into the activity of the occupant of Apartment A. They found *1373 that Dazet was a frequent visitor at that apartment, he had been arrested in the past for five felony offenses and was currently on probation for a distribution of marijuana conviction. All of this appears in the affidavit.
While the conclusion that Dazet's apartment was the source of Torres' illicit source of narcotics, arrived at by the investigating officers, the affiant and the issuing magistrate, may not be infallible, the conclusion is nevertheless based upon sound and reasonable probabilities. Only the fact that Apartment B had not been checked out as a repository of drugs remained to establish with certainty that Apartment A was the repository. A process of elimination requires such a conclusion. The issuing magistrate's finding of probable cause is also well-founded because the information received from the confidential informant that Dazet lived in Apartment A and dealt in narcotics there was verified and considered reliable when the investigators ascertained that Dazet lived in Apartment A, he was on probation as a result of a conviction for distributing marijuana, and he had also been arrested several times in the past.
Other support for the informant's reliability is the underlying facts he disclosed to the agents. He said Dazet had sold drugs to him and he had seen a large quantity of cocaine and marijuana in Apartment A. (While the informant Lee later denied this in part, at the hearing the trial judge obviously did not accept the denial as credible.) In any event these underlying facts upon which the informant based his disclosure were such that they did add reliability to his statement when the occupant of Apartment A was known by the issuing magistrate to be a convict and dope peddler.
In addition, the affidavit does state that a search warrant was executed on Lee's apartment and the confidential informant was arrested by the Jefferson Parish Sheriff's Office, Narcotic Division agents within 24 hours prior to the seizure in Dazet's apartment. The fact of the informant's arrest by the agents and that he was not a mere "tipster" creates an even stronger presumption of reliability. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
A magistrate needs only a substantial basis to determine that evidence was probably located where the informant said it was, it need not be "an open and shut case," only reasonable probabilities are required to support the issuance of the warrant. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). As an example, the Fifth Circuit in Bastida v. Henderson, 487 F.2d 860 (1973) approved a magistrate's warrant based on "the entire picture disclosed to him," stating that he was entitled to use common sense to support his actions.
This attitude harks back to the fundamental principles of reason enshrined in the constitution's Fourth Amendment and the decision of the United States Supreme Court in Ventresca v. U. S., 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). As Spinelli observed
"... in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, [13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270-271, 80 S.Ct. 725, 735-736 [4 L.Ed.2d 697]." Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 591, 21 L.Ed.2d 637.
Further, where the law enforcement officers have respected the constitutional mandate to secure a warrant before searching, although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.
The law encourages officers to go to a magistrate before a search is made if feasible, and they must not be held to the rigid technical legalities to which judges and lawyers are held in the preparation of their affidavits.
*1374 We decide, therefore, that the ruling of the trial judge was correct when he denied the motion to suppress.
Assignment 2: A sentence to imprisonment to five years is not excessive or cruel and unusual punishment in derogation of a convicted defendant's rights. The legislature's authority is plenary and its determinations on punishment for crime is vested with a presumption of constitutionality. State v. Mallery, 364 So.2d 1283 (La.1978). Here the sentence did not exceed that permitted by statute; it was, to the contrary, the minimum permissible sentence in such cases. La.Rev.Stat. 40:967.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, DENNIS and CALOGERO, JJ., concur.
NOTES
[*] The Honorable Paul B. Landry served as Justice ad hoc in this case.