I í MURRAY, Judge.
Relator, Lee Miskell, requests this Court to exercise its supervisory jurisdiction and reverse the district court’s denial of his motion to suppress evidence. For the following reasons, we reverse the district court’s judgment, and grant relator’s motion to suppress.

FACTS

At the hearing on the motion to suppress Detective Michael Harrison testified that he arrested the relator, Lee Miskell, in August of 1997. The circumstances surrounding the arrest were as follows: Detective Harrison received information from a confidential informant that an older black gentleman identified as Lee was the purveyor of .crack cocaine from a residence at 6716 Tara Lane. Detective Harrison verified the information received from the confidential informant by attempting a controlled purchase from Lee at 6716 Tara Lane. Detective Harrison searched the confidential informant and provided him with funds to make a purchase, then escorted the confidential informant to 6716 Tara Lane. He observed while the informant proceeded to 126716 Tara Lane, met with the relator, made a purchase, and returned to the undercover vehicle with three pieces of crack cocaine. Based on his observations, he obtained a search warrant for 6716 Tara Lane.
Later that day, Detective Harrison’s unit returned to Tara Lane to execute the search warrant. Prior to executing the warrant he conducted a short surveillance to ascertain if the relator was still present and still selling crack cocaine. He observed the relator participating in several transactions. He observed a female knock on the door. She met with relator and gave him currency in exchange for an object. She left, but returned later and engaged in another transaction outside. Detective Harrison also observed a black male subject meet with relator outside near his vehicle. The male handed relator currency; relator reached into his pocket, opened up a container, removed an object from within and handed it to the male subject who left the area.
Convinced the relator was still selling crack cocaine, Detective Harrison left Ms surveillance position and returned to where his team was -waiting. Armed with the search warrant, the officers entered relator’s residence. Relator was found in the front room. Detective Harrison ordered him to lie down on the floor for safety reasons. As relator complied with the request, he discarded a piece of plastic from Ms hand. Detective Harrison retrieved the plastic bag and found it to contain a white powder substance believed to be powder cocaine. He placed relator under arrest. While he was detaining the relator, the rest of his team was securing the residence. Several other subjects were found in the upstairs portion of the residence. They were all escorted downstairs where they were advised that they were under investigation and that the officers would be executing a search warrant.
Relator was advised of his Miranda rights. A search incidental to his |3arrest for the *1263 powder cocaine revealed that he had a tobacco can in his pocket. The can contained seventy-six pieces of crack, each individually wrapped in little yellow zip-lock bags. No other contraband was found in the residence. A revolver was recovered from the entertainment center in the front room. Mail was found with relator’s name on it. This confirmed the officers’ belief that the relator resided at the residence. The officers recovered two hundred dollars from relator’s shirt pocket.
Detective Harrison insisted that the person he saw opening the door when the confidential informant made his purchase was relator; he knew how relator looked prior to that time and was familiar with him. Detective Harrison admitted that the confidential informant did not inform him that the relator or any individual within the household had threatened their personal safety. He did not get any information from the confidential informant regarding weapons.
Eight police officers participated in the execution of the search warrant. In entering the residence, they pulled the burglar bars off the door. This was done utilizing a van with a winch. The officers were armed. They took the van with the winch to execute the warrant in case the door was locked and they would not be able to enter. The incident report does not reflect the officers knocked at the front door and announced, “police with a warrant,” before they ripped off the iron bars with the van.
An objection to the question of whether the police made a “dynamic entry” into the house was sustained. When asked if a “dynamic entry” was one where the officers mass at the front door, batter the door down, and then insert themselves into, the room that the door opens into, the officer replied, “ In (sic) keeps in tact (sic) with the element of surprise, to keep danger down to ourselves, and to the people we are going to investigate, as well as to preserve ^evidence. To knock and tell them we have a search warrant would have them at the toilet flushing, which we’ve experienced so many thousands of times”. Relator testified that on the date the police came to his home he became aware of the fact that someone was coming into the house as the officer was tearing the door down. The officers were snatching on the door. They kicked the door in and said, “police.” They entered with their weapons drawn and yelling, “Get down, police.” They ordered the .residents to get down on their knees. Relator and his daughter-in-law were inside. They laid down on the sofa in the front room.
Relator testified that if the officers had knocked, he would have heard because he was in the vicinity of the front room. Relator denied conducting a hand to hand transaction with anyone. He claimed that he was at the doctor’s office between 4:00 and 5:00 on the date the incident occurred. He could not remember the name of the doctor, but he had the name on some papers. He heard -a conversation earlier that day between someone and his son, Nathaniel, who lives with him. Relator claimed that if anyone was seen conducting a drug transaction with a member of his household earlier that day, it had to be with one of his younger sons, Nathaniel. At the time of the search, a child was in the residence.

DISCUSSION:

Relator argues the trial court erred when it found the State met the required evidentia-ry burden needed to dispense with the knock and announce requirement.
La.Code Crim. Proe. art. 164 provides: “In order to execute a search warrant a peace officer may use such means and force as are authorized for arrest by Title V,” the general articles pertaining to arrests.
Louisiana’s knock and announce requirement pertaining to arrests is [sfound in La. Code Crim. .Proc. art, 224 and provides as . follows:
■Art. 224. Forcible entry in making arrest In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft,- aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority *1264 and purpose when to do so would imperil the arrest.
In earlier Louisiana cases, decided prior to Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Courts often ruled that the failure to knock and announce did not invalidate a search, but in each of those cases the State showed special circumstances which dispensed with the need for this announcement.
In State v. Thorson, 302 So.2d 578 (La.1974), the officers announced their presence, heard noises inside the residence, and then forced their way inside. The Court found such entry, after announcing, to be valid given the possibility that the drugs sought in the warrant might be destroyed after the residents became aware of the police presence. In State v. Thomas, 329 So.2d 704 (La.1976), the officers kicked in the door of the residence and then announced their presence. The officers involved testified they had received a tip that the defendant had been armed each time the confidential informant had met with him. On appeal, the Court upheld the entry and subsequent search, finding that the unannounced entry was justified due to the officers’ knowledge that the defendant was often armed and also due to the fact that the heroin believed to be in the residence could have easily been destroyed.
In State v. Christiana, 249 La. 247, 186 So.2d 580 (1966), cert. denied, Christiana v. Louisiana, 385 U.S. 835, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966), the officers ^received information that the codefendant, who was implicated in many robberies, was in the defendant’s private office. The officers had no information linking the defendant to any crime, but they believed that the codefendant ■ had committed an armed robbery just prior to going to the defendant’s office. The officers went to the defendant’s office and entered unannounced, surprising both the code-fendant and the defendant, who was found with evidence of a crime. On appeal, the Court upheld the unannounced entry, noting that the officers had information to believe that the codefendant was armed, and thus an announced entry could have placed the defendant in jeopardy. In addition, an announced entry could have given the code-fendant time to escape through another door.
In State v. Bretagnolle, 594 So.2d 1079 (La.App. 4 Cir.1992), writ denied, 596 So.2d 556 (1992), officers intercepted a package in the mail and found it to contain drugs. They arranged a controlled delivery of the package and obtained a search warrant for the defendant’s apartment, but the defendant was suddenly taken to the hospital. Upon his release, a second, uninspected package addressed to the defendant was intercepted, and the officers arranged to have both packages available for pickup in the apartment manager’s office. The defendant eventually retrieved the packages and went to his apartment. The officers followed and knocked on the door. When no one responded, the officers used a passkey and opened the door, shouting: “Police!” By the time the officers apprehended the defendant, he had flushed the contents of the first package, which he had discovered had been opened. On appeal, this court found that the entry prior to announcing, but after knocking was valid, given the possibility that the defendant could have disposed of the contraband prior to the officers’ entry. This court stated: “All the circumstances must be|7examined to determine if the force used in the execution of a warrant or the method of entry was unreasonable.” Id. at 1082.
In State v. Johnson, 534 So.2d 1322 (La. App. 4 Cir.1988), writ denied, 540 So.2d 326 (1989), officers obtained a warrant for an apartment, obtained a passkey, and went to the apartment. One officer knocked on the door, asking for the resident and identifying himself by his first name only. The defendant, who was inside the apartment, called through the door that the resident was not home and that she would not open the door unless the resident was there. The officers then used the passkey to enter the apartment. On appeal, the defendant contended the officers’ entry, in the absence of any announcement of their true identity, mandated the suppression of the evidence subsequently seized pursuant to the warrant. This court rejected this argument, finding that the officers were justified in entering without identifying themselves, based in part *1265 on the testifying officer's assertion that earlier that day someone who had exited the apartment had seen the officer watching the apartment. This court reasoned that person may have alerted the resident to the surveillance, and thus an unannounced entry was justified. We note that Johnson appears to hold that the fact that the officers had a warrant could have been sufficient reason to enter unannounced. However, given the Court’s holding in Wilson, this fact alone would not justify an unannounced entry.
The above cited cases were all decided prior to Wilson’s holding that an unannounced entry may violate the Fourth Amendment. In Wilson, the Court held that the failure to “knock and announce” prior to entering a house to execute a warrant may, in the absence of special circumstances, violate the Fourth Amendment. In Wilson police officers received information concerning drug sales by the defendant from a confidential informant who had purchased [ ^marijuana and methamphetamine at the defendant’s home. Testimony indicated that at the time the informant purchased the drugs the defendant produced a pistol and waved it at the informant, threatening to kill her if she turned out to be working for the police. The officers obtained a search warrant. When the officers proceeded to execute the warrant they found the main door to defendant’s home open. While opening an unlocked screen door and entering the residence, they identified themselves as police officers and stated that they had a warrant. Once inside they seized marijuana, methamphetamine, valium, narcotics paraphernalia, a gun and ammunition. They found the defendant in the bathroom, flushing marijuana down the toilet. Defendant and a roommate were arrested and charged with delivery and possession of marijuana, delivery of methamphetamine, and possession of drug paraphernalia. Defendant’s motion to suppress because of the officers’ failure to knock and announce before entering her home was denied. Defendant was tried, convicted and sentenced to serve thirty-two years in prison. The Arkansas Supreme Court affirmed, rejecting defendant’s argument that the Fourth Amendment required officers to knock and announce prior to entering the residence. The U.S. Supreme Court reversed and remanded the case. The Court traced the origin of the “knock and announce” rule to early common law and stated:
Our own cases have acknowledged that the common law principle of announcement is “embedded in Anglo-American law,” Miller v. United States, 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958), ■but we have never squarely held that this principle is an element of the reasonableness inquiry under the Fourth Amendment. [footnote omitted] We now so hold. Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer’s entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. 19Contrary to the decision below, we hold that in some circumstances an officer’s announced entry into a home might be unreasonable under the Fourth Amendment.
Id. at 514 U:S. 934, 115 S.Ct. at 1918.
Relying primarily upon Wilson v. Arkansas, this Court, in State v. Thompson, 97-0368 (La.App. 4 Cir. 4/23/97), 693 So.2d 282, held that police officers’ unannounced entry into’ a residence, using a battering ram, in broad daylight, to execute a search warrant was unreasonable, given the absence of circumstances to justify the failure to knock and announce. In State v. Thompson, the officer testified that the police received a tip that drugs were being sold from the residence, and the officers set up a controlled purchase from the house by the confidential informant. Based upon the tip and the púrchase, the officers obtained a search-warrant. When executing the warrant, the- officers opened the door with a battering ram, entered, and found the defendant, who they saw throw down a bag found to contain*: crack cocaine. There was no indication that the officers announced their presence prior to battering the door open. Noting that the burden was on the State to show the special circumstances which would obviate the need • to “knock and announce,” and that the State’s witness failed to do so, this court found the *1266 trial court correct in finding that the unannounced entry was unlawful and correctly suppressed the evidence.
The facts of this case are almost indistinguishable from the facts in State v. Thompson, supra. The State failed to present any circumstances particular to this case which would have justified the unannounced entry. Detective Harrison admitted the confidential informant made no mention of any weapons. Nor was there any indication anyone could have been in the residence who could have destroyed any evidence or that anyone was in a position to spot the | ipofficers and warn any occupants of the officers’ approach. The officer gave no reasons for using a van with a winch to batter the door down. Detective Harrison’s testimony seems to indicate that in a drug case a dynamic entry is almost always made because the element of surprise is needed. He indicated that otherwise the suspects would be attempting to flush the drugs down the toilet, a situation he had witnessed “thousands of times.”
This case differs from the facts in Wilson. In Wilson, the informant indicated the defendant waived a semi-automatic pistol in her face when she bought drugs from him and told her he would kill her if he found out she was working for the police. While recognizing this factor could be considered in determining if an unannounced entry was lawful, the Court nonetheless remanded the case to the Arkansas Supreme Court for its determination of the reasonableness of the entry.
Notwithstanding Detective Harrison’s testimony concerning the possibility of evidence being destroyed when police officers announced their presence, we have discovered no ease law wherein the courts have been willing to dispense with the requirement to knock and announce in drug eases. We recognize the officers’ years of experiencing the flushing of drugs down toilets and give that fact some weight. In fact the dissenting judge in State v. Thompson, supra, implied as much when he opined that in cases where police officers have a valid search warrant to search' a specific residence for evidence of illegal drug activity, the officers necessarily have reasonable cause to believe exigent circumstances exist for an unannounced entry.
However, in Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the Court stated that the Fourth Amendment does not permit a blanket exception to the knock and announce requirement simply because the case involves a drug | ubivestigation. Rather, the Court stated that police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit effective investigation of the crime, by for example, allowing destruction of evidence.
Because the State failed to present any factors special to this ease which are not generally present in other cases where officers execute a search warrant for drugs, the State failed to show the exceptional circumstances which warrant an unannounced entry. Therefore, we find that the trial court erred by denying the suppression motion.
For the above reasons, we grant the writ application and reverse the judgment of the district court.
WRIT GRANTED; JUDGMENT REVERSED.
BYRNES, J., dissents.