340 So.2d 1382 (1976)
STATE of Louisiana, Appellee,
v.
Jamie Lee WILLIAMS, Appellant.
No. 58585.
Supreme Court of Louisiana.
December 13, 1976.
Rehearing Denied January 21, 1977.
*1383 Curtis W. Cary, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Albert S. Lutz, Jr., Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant, age 16, pleaded guilty to attempted aggravated rape, La. R.S. 14:27, 42, and was sentenced to fifty years at hard labor. The sole assignment of error strongly urged is that the sentence constituted excessive punishment in violation of Article 1, Section 20, La. Constitution of 1974.[1]

I.
The circumstances of the plea are as follows:
The defendant, then a fifteen year old boy, was picked up at about 7:30 in the evening while riding his bicycle from his cousin's house to his home. The police detained him as a suspect of some rapes in the neighborhood (one of which had occurred a week earlier). They did so because his description and bicycle resembled that of the reported rapist.
He was brought to the police station. Within thirty minutes of interrogation, he orally confessed to the present rape and to two other unsolved rapes in the neighborhood. The police officers testified that they had previously explained his Miranda rights to him and that he voluntarily waived them in confessing. The confession was reduced to writing two days later, after more interrogation the following day.
After an evidentiary hearing, the trial court overruled the defendant's motion to suppress these confessions as involuntarily obtained. Three months later, the defendant, then aged 16, pleaded guilty by way of a plea bargain.
The defendant, not admitting guilt of rape, expressly pleaded guilty in order to avoid the then-applicable death penalty. (On the other hand, the state made a showing of its strong evidence indicating guilt of the crime.)
The defendant was fully interrogated by the court for it to ascertain that the plea was free and voluntary, with full understanding of its consequences. The defendant also testified that he was satisfied with his representation by appointed counsel.
The state, in agreeing to the plea, did so as to assure the certainty of punishment, without the delays of jury trial and appellate proceedings. It did not dismiss the charges as to the other two rapes; it agreed only not to bring the defendant to trial on them "so long as he is serving a sentence on this plea until such time as the statute of limitations runs on the other indictments."

II.
A plea of guilty waives all non-jurisdictional defects in the proceedings prior to the plea, except those represented by a qualified plea conditioned upon reservation of specified pre-plea errors. State v. Crosby, 338 So.2d 584 (La.1976). Nevertheless, a complaint of sentence-excessiveness is not waived under this doctrine, since the sentence occurs subsequent to the plea.
However, the issue of the excessiveness of the penalty cannot be raised unless, at the time it is imposed, objection to it is made on the ground that it is excessive. La.C.Cr.P. art. 841; State v. Williams, 322 So.2d 177 (La.1975). See also State v. Bryant, 325 So.2d 255 (La.1976) (concurring opinion, 325 So.2d 265 at 267). After such *1384 objection (if the excessiveness is reviewable, which this court has not yet held), a hearing may be held at which the factual circumstances indicating excessiveness or not may be shown, with an opportunity for the trial court to amend its sentence accordingly, La.C.Cr.P. art. 881, if such be the case.
The issue of excessiveness is therefore not preserved for appellate review, if any, by us.

Decree
Accordingly, we affirm the conviction and sentence.
AFFIRMED.
SANDERS, C. J., and MARCUS, J., concur in the decree.
DENNIS, J., concurs in the result.
DIXON, J., concurs with reasons.
TATE, J., files additional concurring reasons.
DIXON, Justice (concurring).
I respectfully concur.
To require a contemporaneous objection to the sentence as "excessive" to preserve appellate review is not a reasonable rule. Here, however, there was a plea bargain.
TATE, Justice (concurring).
The writer appends these additional comments in elaboration of views previously expressed by him in State v. Bryant, 325 So.2d 255, 265 (La.1976) (concurring opinion).
Sooner rather than later this court must face the issue of the added dimension of judicial review provided by Art. I, Section 20, Louisiana Constitution of 1974. This constitutional provision not only prevents subjection of any person by legislature or court to cruel or unusual punishment, but also to "excessive" punishment.
The appeal in the present case forced me, as author for the court, to become concerned with study and consideration of the legal and practical issues which arise if excessiveness of a sentence is now constitutionally a subject of appellate review. For what use they may be in suggesting future lines of inquiry, I am summarizing my at least tentative conclusions as to them; even though, for procedural reasons, we ultimately concluded in the instant case that the issue of excessiveness is not before us.
The issues implicitly raised by appellate review as to excessiveness concern:
I. Did the Louisiana Constitution of 1974 indeed mandate judicial review as to excessiveness; II. If so, what are the procedural methods or problems involved in such review?; III. If excessiveness is reviewable, what sources, if any, provide guidance as to excessiveness or not of a sentence?

I.
The Louisiana Constitution of 1921 merely prohibited "cruel and unusual punishment." Article I, Section 12. In a deliberate change of wording, the new Louisiana Constitution of 1974 broadened the constitutional provision (and the duty of our courts in review of sentences) by providing, Article I, Section 20: "No law shall subject any person . . . to cruel, excessive, or unusual punishment." (Italics mine.)
The deliberate inclusion of a prohibition against "excessive" as well as "cruel and unusual" punishment adds an additional constitutional dimension to judicial imposition and review of sentences.
By the new constitution's mandate, the People have made inapplicable the prior standards of judicial review of sentences as cruel and unusual established by prior jurisprudence interpreting the former state constitutional provision, as well as jurisprudence interpreting the federal constitution's Eighth Amendment prohibition against "cruel and unusual punishments."
Two of the leading figures of the 1973 constitutional convention have correctly summarized, in my opinion, the effect of the new constitutional requirement that no sentence imposed under our criminal law be "excessive".
Professor Lee Hargrave of the LSU Law School faculty served as the co-ordinator of *1385 legal research for the Constitutional Convention of 1973; he directed research for the committee on the Bill of Rights and Elections. In discussing this provision of the new constitution, Professor Hargrave states in his article, "The Declaration of Rights of the Louisiana Constitution of 1974", 35 La.L.Rev. 1, 63 (1974):
"The prohibition against cruel or unusual punishment is derived from the eighth amendment and Article I, § 12 of the 1921 constitution. The new section, however, adds that no law shall subject any person to `excessive punishment,' broadening the prior prohibition against `excessive fines'. This gives the courts, in the exercise of their judicial review power, a basis for determining that sentences, whether fine, imprisonment or otherwise, though not cruel or unusual, are too severe as punishment for certain conduct and thus unconstitutional. It is a basis for extending the court's control over the entire sentencing process."
One of the co-authors of the Constitutional Convention's Declaration of Rights now Article I of the Louisiana Constitution of 1974, State Representative Louis "Woody" Jenkins, wrote, see "The Declaration of Rights", 21 Loy.L.Rev. 9, 39 (1975):
"The prohibition against `excessive . . . punishment' makes a great change in the law and requires the courts to do justice in each case, regardless of any legislative assertion. This standard allows the courts to avoid strained interpretations of what is cruel and unusual punishment, in order to reach the sometimes more important question of whether the punishment does, in fact, fit the crime. For example, it is much easier to find that imposition of the death penalty is excessive as punishment for such crimes as rape and kidnapping than that it is cruel or unusual. . . . Mandatory penalties are particularly suspect because they frequently have no relation to the magnitude of the offense."
In contrast with Louisiana's Section 20, the United States Constitution does not in terms prohibit "excessive" punishment. The Eighth Amendment reads, "Excessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishments inflicted."
The corollary provision of the previous Louisiana Constitution of 1921, Article I, Section 12, tracks the wording of the Eighth Amendment. Given the prior Louisiana constitution and the classic language of the Eighth Amendment to the United States Constitution, the addition of the word "excessive"as applying to all punishments and not limited to finesmust be considered intentional, expanding of the prior law, and significant.
The constitutional history of the "cruel, excessive or unusual punishment" clause of the 1974 constitutionfrom committee through enactmentsupports this thesis. And it is a fundamental tenet of constitutional construction that no word is to be treated as mere surplusage.
In order to understand the proper meaning to be given to the term "excessive punishment," it is helpful to look at the jurisprudential gloss on the "cruel and unusual punishments" language of the Eighth Amendment to the United States Constitution. The United States Supreme Court held in Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) that the notion of cruel and unusual punishments included an element of excessiveness. But as developed in the case law, cf. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), the excessiveness referred to under the Eighth Amendment approaches the literal meaning of the "cruel and unusual."
In light of this background, the term "excessive" in Section 20 of the 1974 Constitution must mean punishment which is excessive but which nevertheless might not fairly be characterized as cruel and unusual.
The dictionary defines "excessive" as "exceeding the usual, proper, or normal." Webster, Seventh New Collegiate Dictionary (1967). A logical inference is the new language was intended to prohibit a level of punishment out of proportion with the offense. The wording of the 1864 (Article 94) and 1868 (Article 102) Louisiana Constitutions *1386 is helpful in this regard: "All penalties shall be proportioned to the nature of the offence."
It may be argued that Section 20 scrutiny of the punishment meted out under a law must be limited to the facial constitutionality of the penalty provisions. However, under the federal Eighth Amendment, "[i]t is also settled that the proscription of cruel and unusual punishments forbids the judicial imposition of them as well as their imposition by the legislature. Weems v. United States, 217 U.S. 349, 378-82, 30 S.Ct. 544, 553-555, 54 L.Ed. 793." Furman v. Georgia, 408 U.S. 238, 241, 92 S.Ct. 2726, 2728, 33 L.Ed.2d 346 (concurring opinion).
Moreover, the focus of Louisiana's Section 20 is to prevent "any person" from being subjected to excessive punishment (as will be made clear below): Thus, a particular penalty may be excessive, despite its appropriateness in other cases, given particular facts and circumstances in an individual case.
The phraseology of Section 20 is, "No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment." On the face of it, then, it might be suggested that Section 20 confines its application to the "law," rather than to its application in a particular case. However, a study of the convention antecedents of Section 20 demonstrates otherwise.
As initially introduced in the Committee on the Bill of Rights and Elections (CBRE), the phrasing was as follows: "No person shall be subjected to torture or to cruel, unusual, or excessive punishments or treatments. . ." CBRE Tentative Proposal No. 89, May 5, 1973; Documents of the Louisiana Constitutional Convention of 1973, Relative to the Administration of Criminal Justice (La. Const. Records Commn. 1976) (hereinafter "Documents"), at 863. On August 22, 1973, the Committee amended the section on the Right to Humane Treatment by adding the prohibition against euthanasia, CBRE Tentative Proposal No. 278, Documents, at 929, but left the remainder intact.
The original Committee Proposal No. 2 used the same kind of phraseology, "No person shall be subject to torture or to cruel, unusual, or excessive punishments or treatments . . ." The substitution for Committee Proposal No. 2Committee Proposal No. 25, reprinted as engrossedused identical phraseology, "No person shall be subjected to euthanasia, torture or cruel, unusual or excessive punishments or treatments. . ." Committee Proposal No. 25 was reported out to the floor, and on First Enrollment, read as described above.
The change in phraseology from "No person shall be subject to" to "No law shall subject any person to" occurred on the floor before the entire convention on September 8, 1973. There was no objection to, or argument about, the phraseology of "No person shall be subjected to" as regards "cruel, excessive or unusual punishments." Rather, the focus was on the prohibition against euthanasia, and whether or not, as phrased, any person could be allowed to die a natural death. See Verbatim Transcripts, Vol. XIV, 44th day, at 23 et seq. In response to this concern about the euthanasia prohibition, an amendment was proposed, rephrasing the language in the "No law shall subject any person to" form. Id. at 50. This amendment was adopted, id. at 53, and carried over into the final constitutional form of Section 20.[1]
In its evolutionary context, Section 20 thus was meant to prohibit excessive punishment to a person for an offense, rather *1387 than merely to bar a legislative act excessive in punishment on its face. Section 20 guarantees each citizen's "Right to Humane Treatment," and is not merely a limitation on the legislature to enacting excessive-punishment laws.
Under the 1921 Constitution, the legislature attempted to limit judicial review of particular sentences under the "cruel and unusual punishment" clause, through Article 878, La.C.Cr.P. (1966) (and its source statute):
"A sentence shall not be set aside on the ground that it inflicts cruel or unusual punishment unless the statute under which it is imposed is found unconstitutional." See also Official Revision Comment (a).
Under the 1974 Constitution, the legislature has not attempted to expand the Article 878 clause to "excessive punishment." (Nor, if Section 20 mandates judicial review as to excessiveness of a sentence, may it constitutionally do so.)
Thus, at the present time no statutory bar purports to forbid judicial review of the excessiveness of a particular sentence. And indeed, the legislature in the 1976 regular session, Act 694, has recognized the propriety of this court's review of at least death sentences on a case-by-case basis to determine if, on the facts, the sentences are excessive. Act 694 enacted a new Article 905.9, La.C.Cr.P., which reads in relevant part, "The Supreme Court of Louisiana shall review every sentence of death to determine if it is excessive."
Support for the proposition that review is proper in this court for "excessiveness" of individual sentences is found in the only reference to "excessive punishment" in the convention floor debates.
Delegate Weiss had been assigned as the floor manager for the section on the Right to Humane Treatment. Documents, at 929. Delegate Willis asked him if the clause would "not allow me to appeal and have the judge review a sentence on the grounds that the sentence is excessive and so the punishment is excessive?" Delegate Weiss answered "yes," but suggested that "an amendment is forthcoming in this regard." Verbatim Transcripts, Vol. XIV, 44th day, September 8, 1973, at 20; Documents, at 690. The clause was never amended, however; and the availability of individual sentence review stands as originally intended by the constitutional provision.
This court has previously suggested that it will review a punishment for "excessiveness" in an appropriate case. See State v. Whitehurst, 319 So.2d 907, 909 & n.1 (La. 1975); State v. Fisher, 321 So.2d 519, 520 (La.1975) (majority opinion, and concurrence of Justice Dixon); State v. Pierce, 321 So.2d 523, 524 (La.1975) (concurrence of Justice Dixon). Indeed, in State v. Walker, 328 So.2d 87, 89 (La.1976), the court evaluated the "excessiveness" of a sentence on the merits and rejected the complaint that the sentence was excessive.
The writer suggests, in conclusion, that excessiveness of a sentence is reviewable on appeal by reason of the mandate of Section 20 of Article I of the Louisiana Constitution of 1974.

II.
The several authoritative studies of the criminal justice system made in recent years have all recommended that the sentencing system be reformed to include (a) principled and articulated reasons for sentencing, and (b) appellate review to help assure both individualized consideration and principled reasons for the imprisonment and its relative length.
See: American Bar Association Standards Relating to Appellate Review of Sentences (1968) and Relating to Sentencing Alternatives and Procedures, esp. Standards 4.1-4.6, 5.1-5.7, 7.1, 7.2 (1968); National Advisory Commission on Criminal Justice Standards and Goals Relating to Courts, Standards 5.1, 6.1 (1973), Relating to Corrections, Standards 5.1-5.19, Standards 16.7, 16.8 (1973); National Council on Crime and Delinquency, Council of Judges, Model Sentencing Act 2d (1972), reprinted at 18 Crime and Delinquency 335 (1972); American Law Institute, Model Penal Code, Sections 6.01-6.13, 7.01 to 7.09 (1962); American Bar *1388 Foundation Survey of the Administration of Justice in the United States, "Sentencing" (by R. O. Dawson, published by Little, Brown & Co., 1969); National Conference of Commissioners on Uniform State Laws, Uniform Rules of Criminal Procedure, especially Rules 612 and 613 (1974).
The substance of these informed recommendations by leading judges, prosecutors, defense attorneys, legislators, academics, penologists and others is that: sentencing should be accomplished as a result of a formal hearing following plea or conviction; at this hearing, a record should be made of aggravating and mitigating factors, such as including pre-sentence reports and relevant statements or information (under liberal rules of admissibility); the sentence itself should be on an articulated basis by the sentencing judge, explaining the reasons for the severity or leniency of the sentence in the light of accepted norms (see III below).
Sentence review is not a novel or revolutionary principle. At least twenty-six American states already afford it. See Comment, Appellate Review of Sentences: A Survey, 17 St. Louis University L.J. 221 (1973). Efficient procedures have been worked out, involving a minimum of technicality and delay. See Hopkins, Reviewing Sentencing Discretion: A Method of Swift Appellate Action, 28 UCLA L.Rev. 491 (1976).
In Louisiana, in the absence of legislation or formal court rule requiring this type of hearing and reasoned explanation for all more severe sentences, the sort of sentencing hearing above-indicated would not be made except where the defendant objected to the sentence as excessive, as noted in the majority opinion. Furthermore, in the absence of formal court rule exercising the constitutional power to review for excessiveness all sentences (some of the authorities above cited recommend automatic review in all appeals for excessiveness of sentence), the excessiveness of the sentence would not be reviewed unless the offender had both objected to the sentence on that ground and had so questioned the excessiveness by an assignment of error.

III.
The rule of law implies that even discretion shall not be exercised at the whim of an individual officer of government (the judge, in the instance of sentencing), but shall rather be controlled, structured, and subject to some check as to its proper exercise. Davis, Discretionary Justice (LSU Press, 1969) (see especially pp. 133-41, relating to judicial sentencing).
The proposals to reform sentencing procedures and to afford appellate review all conclude that sentencing principles exist by which, on objective basis (but allowing for individualized deviation), certain factors can be used by both sentencing and reviewing judges to weigh the type of punishment (imprisonment, suspension, etc.) and its severity or leniency. In general, the factors tend to measure the seriousness of the crime against the offender's previous record and his potential for contributing or not to future social stability.
With surprising unanimity, for instance, the recommendations in the light of these factors may indicate sentences of twenty-five to thirty years for violent crimes by those without hope to social redemption, to specified ranges of shorter terms of imprisonment for serious felonies to those without prior record of violence and with good prospects of rehabilitation. The authorities above cited in themselves afford a body of general and specific principle available for judicial application in sentencing and its reviewprinciples evolved by some of the best American minds, judicial, legal, and social scientist, in the light of American experience.
The American Bar Association Standards recommend, for example, that sentencing institutes of judges in each state convene from time to time to develop criteria for the imposition of sentences, with participation of prosecutors, members of the defense bar, and corrections authorities. ABA Standards Relating to Sentencing Alternatives and Procedures, Standard 7.2 (1968).
*1389 Drawing on the experience of these studies, our own legislature has recently enacted criteria of aggravating[2] or mitigating[3] circumstances for the sentencing jury and appellate court to take into consideration in determining whether to impose the ultimate death penalty instead of life imprisonment for a capital offense. The surveys and studies cited have developed criteria of this nature with respect to various types of crimes (felonies involving violence or not, misdemeanors) and to various ranges of offenders (professional criminal, first-offender, young offender, etc.).
The experience of other states indicates that from these formal sources, including sentencing institutes in a given jurisdiction, a body of precedential law can develop affording coherence and a rational basis to the sentencing process.
Most of the present national recommendations recognize that a large discretion must be entrusted to the sentencing judge, who has primary responsibility in the sentencing function, to individualize the sentence according to the circumstances of the crime and of the offender before the court. However, important in the rule of law, the recommendations emphasize principled exercise of this discretion, with articulated reason for variations from normal ranges, and with appellate examination to assure some degree of principled regularity in the exercise of this large discretion.
NOTES
[1] The other assignment urges that La.R.S. 14:42, the statutory violation for which indicted, is unconstitutional because of the mandatory death penalty thereby provided. We have held that the statute itself is constitutional, although the death penalty as then provided by it is unconstitutional. Selman v. Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). See decisions summarized in State v. Fletcher, 341 So.2d 340 (La.1976).
[1] This is also the understanding of Professor Hargrave:

An innovation [in Section 20] is the provision, "No law shall subject any person to euthanasia." The definition of euthanasia referred to during the debate was a common onethe act or practice of killing individuals that are hopelessly sick or injured, for reasons of mercy. As proposed by the committee, the language was, "No person shall be subjected to euthanasia," but it was feared that this language might be construed to prevent a physician from halting extraordinary life-continuation treatments of a dying patient. A clarifying amendment was thus adopted to make clear that the prohibition is limited to laws requiring persons to be subjected to euthanasia.
Hargrave, cited above, at 35 La.L.Rev. 63.
[2] La.C.Cr.P. art. 905.4 (1976) provides:

"The following shall be considered aggravating circumstances:
(a) The offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, or armed robbery;
(b) The victim was a fireman or peace officer engaged in his lawful duties;
(c) The offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping;
(d) The offender knowingly created a risk of death or great bodily harm to more than one person;
(e) The offender offered or has been offered or has given or received anything of value for the commission of the offense;
(f) The offender at the time of the commission of the offense was imprisoned after sentence for the commission of an unrelated forcible felony;
(g) The offense was committed in an especially heinous, atrocious or cruel manner."
[3] La.C.Cr.P. art. 905.5 (1976) provides:

"The following shall be considered mitigating circumstances:
(a) The offender has no significant prior history of criminal activity;
(b) The offense was committed while the offender was under the influence of extreme mental or emotional disturbance;
(c) The offense was committed while the offender was under the influence or under the domination of another person;
(d) The offense was committed under circumstances which the offender reasonably believed to provide a moral justification or extenuation for his conduct;
(e) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication;
(f) The youth of the offender at the time of the offense;
(g) The offender was a principal whose participation was relatively minor;
(h) Any other relevant mitigating circumstance."