364 So.2d 1283 (1978)
STATE of Louisiana
v.
Alvin F. MALLERY, Jr.
No. 62542.
Supreme Court of Louisiana.
November 13, 1978.
Rehearing Denied December 14, 1978.
Paul A. Bonin, Garrity, Levenson & Bonin, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-respondent.
SUMMERS, Justice.
Alvin F. Mallery was indicted by the Orleans Parish Grand Jury for the April 28, 1976 distribution of heroin, a crime punishable at that time by a statute which mandated "life imprisonment at hard labor and, in addition, [the offender] may be required to pay a fine of not more than fifteen thousand dollars." La.Rev.Stat. 40:966. See Act 207 of 1973. The penalty provision was later amended by Act 631 of 1977 to add "without benefit of probation or suspension of sentence." Consideration of this case will therefore involve the statute as it existed at the time of the offense, prior to the 1977 amendment.
*1284 Mallery was represented by retained counsel. He was tried by a jury, found guilty as charged and sentenced to life imprisonment at hard labor. On appeal the conviction was affirmed on July 1, 1977. State v. Mallery, 347 So.2d 847 (La.1977).
An application to the district court for a writ of habeas corpus was filed on May 11, 1978. After a hearing on the motion it was denied. Mallery's application to this Court for review of the trial court ruling was granted on July 3, 1978. Although the application for habeas corpus was based upon the contentions that Mallery had ineffective counsel at trial and that the mandatory penalty of life imprisonment was excessive, certiorari was granted principally to consider the claim that the sentence imposed was excessive.
The trial judge was without discretion in sentencing Mallery. The statute's mandate required the sentence imposed. However, it was not and is not mandated by Louisiana law in this case that Mallery serve a life sentence, he could have received probation and a suspended sentence. La.Rev. Stat. 40:966; La.Code Crim.Pro. art. 893. Moreover he continues to be eligible for commutation of sentence and parole. La. Rev.Stat. 15:574.4.
In order to grant Mallery the relief he seeks the mandatory life sentence provision of the statute must be declared repugnant to the requirement of Section 20 of Article I of the Louisiana Constitution which declares that "No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment," or to the proscription against the infliction of "cruel and unusual punishments" embodied in the Eighth Amendment to the United States Constitution.
Research fails to disclose that the United States Supreme Court has ever declared life imprisonment as such unconstitutional. Nor has this Court ever decided that life imprisonment was cruel and unusual punishment whenever imposed. To the contrary, on at least three occasions in written opinions in which the law and facts were adduced, the constitutionality of this penal clause has been upheld. State v. Hopkins, 351 So.2d 474 (La.1977); State v. Whitehurst, 319 So.2d 907 (La.1975) and State v. Stetson, 317 So.2d 172 (La.1975). Today, in State v. Terrebonne, 364 So.2d 1290, this Court again upholds the statute against an attack that it offends the Louisiana Constitution's prohibition against cruel, excessive, and unusual punishments. The law and reasons contained in that opinion are equally applicable to the case at bar. The federal courts have also upheld the constitutionality of the statute. See, e. g., La. Affiliate of NORML v. Guste, 380 F.Supp. 404 (E.D. La.1974); affirmed, 511 F.2d 1400 (5th Cir. 1975); cert. denied 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 96 (1975).
As we understand Mallery's contention, he takes the position that the penalty provision of the statute is excessive as applied in this case because he had no previous convictions, he was not quite twenty-six years old and at the time of the offense he was a heroin addict being treated at a New Orleans Methadone Clinic. Even if these facts are accepted as established the contention is without merit.
A principal argument of the defense based on these facts is that the mandatory character of the sentence leaves no room to individualize the punishment. Justice, the defense argues, unless individualized is not justice at all. This argument overlooks the broad statutory standards in which probation, suspended sentences, commutation and parole are permissible in this case. All of these enactments are designed to "individualize" the punishment to the crime.
According to the defense a guarantee that the sentence be proportioned to the offense is to be found in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Such a proposition is in the first instance a matter which falls squarely within the constitutional prerogative of the Legislature. Except as limited by the constitution its authority is plenary. Its determination is clothed with a presumption of constitutionality which persists until a finding is made, supported by adequate evidence, that *1285 the enactment prescribing punishment has transcended the limitation on legislative power set forth in constitutional enactments of equal or superior dignity. La. Const. arts. I, II, III & V; La.Civil Code art. 1.
It is a matter of common knowledge, and it is a fact, that social conditions in this state are adversely affected by the pervading traffic in and use of drugs. This condition is a serious menace to good social order, which law seeks to protect and maintain. La.Rev.Stat. 15:422. In light of these conditions the facts relied upon by the defense do not demonstrate that the legislative wisdom expressed in the contested statute violates any constitutional limitation on its power, particularly that which proscribes cruel and unusual punishment.
It is no defense to this prosecution that distribution of drugs is not a violent crime and consequently punishment for this offense should not be on a par with seconddegree murder and aggravated kidnapping. Assuming the punishments are equal, traffic in narcotics is an insidious crime which, although not necessarily violent, is surely as grave. Indeed, the effect upon society of drug traffic is pernicious and far-reaching. For each transaction in drugs breeds another and in the case of heroin the degeneracy of the victim is virtually irreversible. Compared to the effect of drug traffic on society, isolated violent crimes may well be considered the lesser of the two evils.
And, as a reference to our decision today in State v. Terrebonne, will demonstrate, Louisiana is not unique in its determination to stem the tide of drug abuse to the extent which serious penalties may deter. Comparable legislation has been enacted in at least six other states.
For the reasons assigned, the ruling of the trial judge is affirmed.
DIXON, J., concurs.
CALOGERO, J., concurs for reasons assigned in State v. Terrebonne, La., 364 So.2d 1290, decided this date.
TATE, J., dissents and assigns reasons.
DENNIS, J., dissents for the reasons assigned by TATE, J.
TATE, Justice, dissenting.
The defendant was convicted of distribution of heroin and sentenced to life imprisonment, as mandated by statute. La.R.S. 40:966 (1973).[1] His conviction was affirmed upon appeal. 347 So.2d 847 (La.1977).
Upon his post-conviction application, we granted certiorari, 360 So.2d 875 (1978), primarily to review his contention that the life sentence imposed was unconstitutionally excessive, in violation of the Eighth Amendment to the United States Constitution and also, especially, of the prohibition against "cruel, excessive, or unusual punishment" provided by Article 1, Section 20 of the Louisiana Constitution of 1974.
I dissent from our majority holding that the sentence in this case was not excessive as defined by constitutional standards. Before stating the legal principles applicable, it may be well to note the facts in the instant case, as reflected by the post-conviction hearing and by the record in the applicant's direct appeal, our docket number 59,331.

I.
The applicant was a young man of 25, without previous criminal record or arrest. He was a plumber by trade, with a wife and three children. About three years before the incident, he had become a heroin addict. A year later, he entered a methadone program to break his addiction, and he had been able to reduce his previous use of six bags of heroin a day. Nevertheless, at the time of the offense, he still used heroin intermittently, about two bags a day.
*1286 The particular transaction at issue occurred as follows, according to the police witnesses for the state:
Narcotics agents were informed by "Sunny," a confidential informant, that a drug buy would take place. An officer went with Sunny, met with the defendant, and agreed with the latter to buy some heroin. The defendant made a telephone call from a public pay station. They then went to another location, where the defendant met a woman, apparently transferred the officer's $150 to her for ten bags of heroin, turned eight of them over to an undercover police officer, and received two of them for his help in arranging the transaction.
About a month later the accused was arrested for the distribution offense. The woman (wholesaler) from whom he obtained the drugs was never charged, nor was anyone else except the defendant.
The defendant denied various details of the transaction, but he admitted he had helped arrange for the purchase. According to him, Sunny (the police informant) had come to his home, complaining of withdrawal symptoms, and had asked for help in locating some drugs. The defendant told Sunny he was not sure if he could help, but he telephoned someone named "Man," and Sunny and he drove to a location where Sunny met a third man (the undercover police agent) and the defendant met Man. (According to the defendant, Man handled all further participation in the transaction, including obtaining the drugs from the lady after Man had made a telephone call.)
The purchasers gave the defendant two bags of heroin for his help, for his personal use.
Under these facts, the defendant was undoubtedly guilty of the offense of distribution of heroin. Although he was motivated by sympathy for a fellow-addict's needs and by his own addiction, according to him, nevertheless this does not exculpate him from guilt.
Nor (under presently accepted standards of entrapment) does the circumstance that the crime was instigated and set up by an addict-informer, possibly to justify his own continued employment as an informer and his own continued immunity from arrest and prosecution as a heroin possessor, lessen the defendant's legal guilt of the crime. And it is further irrelevant to the accused's guilt that he is punished for what under the record is a one-time participation in a distribution, whereas apparently the wholesalers for whom he was an intermediary were not pursued or prosecuted.
In my opinion, what these attenuating circumstances do suggest, irrelevant as they may be to the defendant's legal guilt of the crime charged, is that the mandatory life sentence is excessive for this single non-professional distribution by this otherwise lawabiding (except for his heroin-use) addict.

II.
I concede that great deference must be given to the legislative determination of the appropriate penalty and that, in view of the enormous social evil at stake, severe penalties may undoubtedly be appropriate for those engaging in heroin traffic for gain. I further concede that a life sentence for a commercial distributor of heroin in large quantities might not be excessive.
What I do suggest, however, is that a mandatory life sentence for a person for a single act of distribution of heroin, however small or insignificant the amount of the drug or the offender's participation, is excessive under accepted constitutional standards. If so, the courts in the performance of their constitutional function cannot blindly defer to the legislative characterization, when to do so offends the constitutional prohibition against excessive punishment of individuals for transgressions. It is the very function and duty of the courts to enforce constitutional protections of individuals against governmental excesses prohibited by our constitutions, however popular with the majority of the moment may be its government's action against these individuals, and however despised the latter may be by the majority at the time.
In determining what is excessive punishment under the federal Eighth Amendment's *1287 prohibition against cruel and unusual punishment, the federal courts have adopted a standard that a sentence is excessive when it is grossly out of proportion to the severity of the crime. Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Rummel v. Estelle, 568 F.2d 1193 (C.A.5, 1978); Downey v. Perini, 518 F.2d 1288 (C.A.6, 1975); Hart v. Coiner, 438 F.2d 136 (C.A.4, 1973), certiorari denied 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974). Unconstitutional excessiveness may also result from the automatic imposition of a harsh penalty for all transgressions whatever the circumstances of the crime or the background of the individual offender. Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).
Thus, recognizing these principles, the federal courts in Rummel and Hart, cited above, set aside, as unconstitutional, statutorily mandated life sentences imposed upon multiple offenders, when grossly disproportionate to the underlying crimes upon which the convictions were based. Although the statutes themselves were not declared facially unconstitutional and whenever applied,[2] they were declared unconstitutional insofar as applied to require the imposition of mandatory life sentences when grossly disproportionate to the underlying offenses of the particular offender. Nor does the availability of parole as a matter of administrative grace save from unconstitutionality a sentence excessive as grossly disproportionate to the crime charged. Rummel at 568 F.2d 1196.
The Downey decision, above cited, for similar reasons held to be unconstitutionally excessive mandatory minimum sentences of 10-20 years for possession of marijuana and 20-40 years for sale of marijuana, when applied to a first offender.[3] On the other hand, the United States Second Circuit upheld the constitutionality of mandatory sentences of 4 years to life and of 6 years to life for the sale of cocaine, and for the possession of cocaine with intent to distribute it, respectively; partly because of the recognized probability of parole under the New York statute involved. Carmona v. Ward, 576 F.2d 405 (C.A.2, 1978).[4]
Other state high courts have also invalidated mandatory sentences as disproportionate to the gravity of the offense and as violating state and federal constitutional prohibitions against cruel and unusual punishment.
The California Supreme Court found that punishment relating to drugs other than marijuana, when it precluded parole for a minimum period of ten years as to an offender with prior drug convictions without regard to mitigating circumstances, constituted cruel and unusual punishment in violation of its state constitution. A test similar to Carmona and Hart was applied: an examination of the nature of the offense and the offender, an examination of other punishments for more serious crimes in California, and an examination of other jurisdictions. In re Foss, 10 Cal.3d 910, 112 *1288 Cal.Rptr. 649, 519 P.2d 1073 (1974); see also In re Lynch, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 932 (1972).
In People v. Lorentzen, 387 Mich. 167, 194 N.W.2d 827 (1972) (20 years mandatory minimum sentence for selling marijuana), the Michigan Supreme Court employed a broader test. Besides comparing other statutes, the court determined whether any of the valid goals sought to be achieved by the imposition of the punishment is served by the sentence imposed and found the mandatory penalty excessive. The court remanded the case for re-sentencing to a lesser penalty.

III.
The jurisprudence on proportionality uses several criteria to determine if a penalty imposed by the legislature is cruel and unusual under the federal Eighth Amendment. These include the nature of the offense and the legislative purpose behind the statutory punishment, an examination of the offender, a comparison of how the defendant would be punished in other jurisdictions, a comparison of punishments in the same jurisdiction for other offenses.
Examining these criteria with reference to La.R.S. 40:966 B(1) (1973):
1. The nature of the offense: Unquestionably, for reasons stated by the majority, a life sentence for the distribution of heroin is not excessive under all circumstances. The commercial distribution of heroin is a vicious social evil, in the degradation of human lives and in the other crimes spawned by its addicts who acquire the addiction. Undoubtedly, severe penalties are justified by the legislative purpose to deter similar offenses and to punish such perpetrators of serious social evil.
2. The particular offender and his participation in the offense: Despite the seriousness of the offense, however, a mandatory all-inclusive sentence may be unconstitutionally excessive insofar as applied to a particular offender, when imposed without a rational gradation of his culpability as compared to the more serious offenders punishable by the statute.
Thus, the California Supreme Court stated in In re Foss, cited above at 112 Cal. Rptr. 655, 519 P.2d 1079: "Heroin is an opiate based drug which causes a strong psychological and physiological addiction, or drug dependence, through continued use. We have no doubt that heroin abuse presents a serious problem to our society or that harsh penalties may be necessary to restrict the supply, sale and distribution of this substance. In enacting additional penalties for repeated offenses, however, consideration should be given to the particular circumstances of the offenses committed, such as the quantity of narcotics involved, and whether the transactions were those of an addict to support his habit, as is the case here, or were sales for profit made by other suppliers of heroin."
The Louisiana statute here at issue imposes the same punishment of life imprisonment "regardless of the circumstances of the crime or of the offender, or of the degree of guilt as a retailer or wholesaler or mere giver of drugs, however large or small in quantity." State v. Terrebonne, 354 So.2d 1356, 1357 (La.1978) (concurring opinion).
Here, accepting for the moment the showing in the record,[5] we have a first offender, never before arrested, who was an addict and who had engaged in the distribution of heroin only as an isolated offense. Rather, solicited by a governmental agent who pretended to be another addict in need, the defendant helped him obtain some herointo satisfy the addict's need, as well as (from his tip for performing the service) his own need of the deadly drug. The record also seems to indicate that he had never before been engaged in or even been suspected of participating in a drug sale. *1289 (Rather surprisingly, as in State v. Sykes, 364 So.2d 1293, decided on rehearing this date, no attempt was made by the several governmental agents on the scene to apprehend/prosecute the wholesaler or retailer who actually supplied the drugs, or whom the present addict served only as an ad hoc conduit.)
3. A comparison of other states' penalties for drug-related offenses shows that the Louisiana penalty is the most severe. Only the New York law provides for a mandatory life sentence, but even that is of an indeterminate nature of four (or six) years to life; and (unlike in Louisiana) even that life sentence may not be applicable if only a small amount of the drug is involved. The other states provide for maximum terms of ten years, fifteen years, twenty years, or permit the sentencing judge to establish a maximum sentence of any length up to life but do not require it. Note, "Drug Abuse, Law Abuse, and the Eighth Amendment," 60 Cornell L.Rev. 638, 665-668 (1975). See also footnote 4 above.
4. A comparison of other crimes in Louisiana and their punishments shows that the penalty of R.S. 40:966B is one of the most severe.
First degree murder (La.R.S. 14:30), second degree murder (La.R.S. 14:30.1), and aggravated rape (La.R.S. 14:42) have mandatory sentences of life imprisonment at hard labor without benefit of parole, probation or suspension. (La.R.S. 14:30.1 grants parole power after forty years.) Aggravated kidnapping (La.R.S. 14:44) imposes a penalty of life imprisonment if the victim is liberated prior to imposition of sentencing.
A person convicted of armed robbery (La. R.S. 14:64) can receive a sentence of 5-99 years of hard labor without parole, probation or suspension. Other violent crimes do not impose a life sentence: See, e. g., La. R.S. 14:31, manslaughter21 years; La. R.S. 14:51, aggravated arson5-20 years; La.R.S. 14:60, aggravated burglary1-30 years.
It thus appears that the mandatory life sentence for the distribution of heroin, however small in quantity or amateur the participant, is unusually severe compared with the statutory penalties for violations of other crimes in Louisiana.
Summary: Measured by all these criteria except the first, the life sentence here imposed is grossly disproportionate to the particular offense and offender here involved. While the first criteria (the nature of the crime and the legislative purpose) undoubtedly justifies a severe penalty for deterrence and punishment factors, the severity of a mandatory life sentence in this case is excessive because it does not, insofar as the present offender at least, make the severity of such life sentence depend upon a rational gradation of the offender's culpability, which is here that of a petty one-time offender rather than that of a commercial distributor as a consistent course of conduct or one who distributed large quantities for the market.

IV.
Until now, the writer has discussed the criteria of the excessiveness of the present life sentence in terms of its unconstitutionality as "cruel and unusual" punishment prohibited by the Eighth Amendment to the United States Constitution. All the more so does this life sentence, under present circumstances, violate the explicit prohibition of our own state constitution against not only "cruel" or "unusual" punishment, but also against "excessive" punishment. Article 1, Section 20, Louisiana Constitution of 1974.
This additional language in our new state constitution deliberately added a new dimension of judicial review as to the excessiveness of sentences, whether imposed by the legislature or by judges. See summary of constitutional history of the provision and of the authoritative commentary concerning it in State v. Williams, 340 So.2d 1382, 1384 (La.1976) (concurring opinion).
As there noted, the provision was designed to give the courts the power to determine that sentences "`though not cruel or unusual, are too severe as punishment for certain conduct and thus unconstitutional.'" *1290 340 So.2d 1385. One commentator noted "`Mandatory penalties are particularly suspect because they frequently have no relation to the magnitude of the offense.'" 340 So.2d 1385.
In this regard, the general principles for sentencing statutes set forth by the authoritative American Bar Association Standards of Criminal Justice are illuminating. Standard 2.1, Sentencing Alternatives and Procedures, outlines the following general principles which should be applicable:
"(a) All crimes should be classified for the purpose of sentencing into categories which reflect substantial differences in gravity. The categories should be very few in number. Each should specify the sentencing alternatives available for offenses which fall within it. The penal codes of each jurisdiction should be revised where necessary to accomplish this result.
"(b) The sentencing court should be provided in all cases with a wide range of alternatives, with gradations of supervisory, supportive and custodial facilities at its disposal so as to permit a sentence appropriate for each individual case.
"(c) The legislature should not specify a mandatory sentence for any sentencing category or for any particular offense.
"(d) It should be recognized that in many instances in this country the prison sentences which are not authorized, and sometimes required, are significantly higher than are needed in the vast majority of cases in order adequately to protect the interests of the public. Sentences of twenty-five years or longer should be reserved for particularly serious offenses or, under the circumstances set forth in sections 2.5(b) and 3.1(c) (special term), for certain particularly dangerous offenders. For most offenses, on the other hand, the maximum authorized prison term ought not to exceed ten years except in unusual cases and normally should not exceed five years."
Measured by this or almost any other standard now available, the life imprisonment mandatorily imposed for this drug offense under these circumstances is clearly excessive.

V.
I would therefore, on the present showing, set aside the present life sentence as unconstitutionally excessive. Upon sentencing hearing upon the remand (see footnote 5), however, it may be shown that the offender is a commercial distributor of heroin in large quantities (rather than the present being, as it seems on the present record, an isolated transaction by him, involving a relatively small quantity).
In the absence of such showing, the present mandatory life sentence is unconstitutionally excessive insofar as the present offender, and I would order the offender then to be resentenced under the graduated penalties permissible for the next lesser included crime at the time of this 1976 offense, cf. State v. Craig, 340 So.2d 191 (La.1976)i. e., attempted distribution, La. R.S. 14:27D(1) (1975), which provides for imprisonment at hard labor "for not more than fifty years." The trial court would thus be permitted to impose a substantial penalty for this serious crime, but one which would not be unconstitutionally excessive as grossly disproportionate to the circumstances of the present offense.
NOTES
[1] As amended by Act 207 of 1973, La.R.S. 40:966 B(1) provided for mandatory life sentence upon conviction of the offense. After the offense the statute was again amended by Act 631 of 1977 so to provide a mandatory penalty, upon conviction, of "life imprisonment at hard labor, without benefit of probation, or suspension of sentence."
[2] The same court which invalidated the mandatory life sentence in Hart, as excessive because grossly disproportionate to the underlying offenses there, maintained the life sentence when the underlying offenses involved the potentiality of violence and danger to life. Griffin v. Warden, West Virginia, etc., 517 F.2d 756 (C.A.4, 1975).
[3] The decision was vacated and remanded for reconsideration in the light of an amendment to the state statute involved. Perini v. Downey, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975).
[4] In holding the life sentence unconstitutionally excessive for the minor drug offenders involved, the district court had discounted as irrelevant this probability and had judged the excessiveness on the basis of the maximum (i. e., life) sentence possible under the judgment of the court imposing the legislatively mandated sentence. Carmona v. Ward, 436 F.Supp. 1153, 1165 (U.S.D.C., S.D., N.Y., 1977). In analyzing the drug violation statutes of the other American states, the court found that, aside from New York, only Louisiana retains a mandatory life sentence for certain narcotic sentences. 436 F.Supp. 1166-67. The life sentences permitted in six other states, see Carmona at 576 F.2d 424 (dissent), permit the sentencing judge to impose sentence on the basis of a rational gradation of culpability in determining the punishment mandated for the crimes involved.
[5] There was no sentencing hearing or post-conviction evidentiary hearing on the issue of proportionality. Before this life sentence is set aside, an evidentiary hearing might be required, in the event undisclosed sentencing factors would negate the present apparent lack of proportionality of the sentence to the crime and to the present offender.