705 So.2d 254 (1997)
STATE of Louisiana, Appellee,
v.
Daniel R. WASHINGTON, Appellant.
No. 30108-KA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
*256 Louisiana Appellate Project by Richard J. Gallot, Jr., Ruston, Indigent Defender Office by Annisha M. Tanzie, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, D. Bruce Dorris, Assistant District Attorneys, for Appellee.
Before MARVIN, C.J., and STEWART and CARAWAY, JJ.
STEWART, Judge.
Defendant, Daniel R. Washington, appeals the jury verdict convicting him of possession of firearm by a person convicted of a felony and the sentence imposed by the trial judge. Washington was sentenced to a term of 13 years at hard labor and a $1,000 fine. On appeal, Washington urges five assignments of error. For the following reasons, we affirm the conviction and sentence.

FACTS
Police officers, approximately three blocks from the intersection of Orla and Emery streets in Shreveport, Louisiana, responded to a call reporting gunfire at that location. As the officers arrived on the scene, they observed three black males carrying weapons. The suspects immediately fled and were pursued by the police officers. Two of the suspects were apprehended, and one was identified as the defendant. The weapon the defendant carried was recovered from the defendant's parent's home.
The defendant testified during the trial.

DISCUSSION
Assignment of error # 1: The verdict is contrary to the law and evidence and the evidence is insufficient to sustain the conviction of possession of a firearm by a convicted felon.
Assignment of error # 2: The honorable trial court erred by denying defendant's motion for post verdict judgment of acquittal.
The defendant combines these assignments of error for the purpose of argument. The defendant contends the state presented insufficient physical evidence to convict the defendant of the charged offense. Additionally, the defendant alleges the state presented no motive for the defendant to have committed the crime, and the testimony of the police officers was contradictory and confusing.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most *257 favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987); State v. Bosley, 29,253 (La.App.2d Cir 4/2/97), 691 So.2d 347.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, et al, 628 So.2d 27 (La.App. 2d Cir.1993); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied, 462 So.2d 189 (La.1984).
La.C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992).
To convict defendant of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La.R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Tatum, 27,301 (La. App.2d Cir. 9/27/95), 661 So.2d 657.
La.R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused "in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2); State v. Godeaux, 378 So.2d 941 (La.1979), rehearing denied Jan. 28, 1980. Although the existence of intent is a question of fact, it need not be proven as such, but may be inferred from the circumstances of a transaction. La.R.S. 15:445.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra.
At trial, the state presented the testimony of Johnny Young. Mr. Young testified that, at the time of the incident, he lived at 3812 Velva with his mother and two younger brothers. Mr. Young had known the defendant for about eight and one half years. On a Saturday in September, Mr. Young testified he was involved in a shootout near his home. After hearing a shot and seeing an unidentified individual with a gun behind a house, Mr. Young attempted to get the children playing in the area into his house. A second shot was fired in Mr. Young's direction, and he began firing back at the unidentified individual.
Shots were fired from another direction, and Mr. Young saw the defendant shooting an SKS assault rifle from his backyard about 50 feet away. Mr. Young claimed he did not fire back at the defendant because, "His mama and his daddy ain't never did nothing to me, and there's a lot of little kids stay next door to him, so I wouldn't fire my gun towards the kids' house." Mr. Young ran towards his house and lost sight of the defendant. *258 A short period of time later, Mr. Young saw the defendant come around a corner with the rifle in his hand. The police officers who had arrived on the scene went after the defendant. The officers later returned with the defendant to have Mr. Young identify him as one of the shooters. At trial, Mr. Young identified the rifle which was introduced into evidence as the weapon that defendant used to fire shots at him.
Thelma Barnes testified she was outside of her residence with relatives when the shooting started. Approximately five minutes before the shooting started, Ms. Barnes saw the defendant and three other young men walk past her home. After hearing a gunshot, Ms. Barnes called 911. Though she was initially unable to determine who was actually shooting, Ms. Barnes did see the defendant come around a corner with a gun in his hand. Ms. Barnes stated she saw the defendant with "a long big old gun" in his hand. She identified state's exhibit 1 as looking exactly like the weapon she saw the defendant holding. On cross examination, Ms. Barnes admitted she did not tell the police on the scene that she had seen the defendant with a gun because the police did not ask her.
Officer Ronald Jeter of the Shreveport Police Department testified he was assigned to the gun unit on the day the shooting occurred. Officer Jeter and his partner were on routine patrol when they received a call of shots being fired at the intersection of Orla and Emery. The officers were approximately three blocks from the location of the shooting at the intersection of Velva and Emery. As the officers turned the corner in the patrol car, Officer Jeter was able to see three black males at the end of the street and all were carrying guns.
As the officers arrived on the scene, the three individuals with the guns began running and the officers pursued. Two of the males ran behind a building to a fence. Officer Jeter "bailed out" of his car and saw the defendant transfer the rifle he was carrying over the fence to the other male. The defendant attempted to hide near a tree as Officer Jeter approached him. The defendant was immediately handcuffed. The defendant was taken back to the scene of the shooting where witnesses identified him as being one of the shooters. Officer Jeter was able to identify the rifle introduced into evidence as the gun he saw the defendant carrying and transfer across the fence.
Detective Scott Porter testified he was Officer Jeter's partner on the day of the shooting. When the officers received a call regarding shots being fired, they were approximately three blocks from the area. As they arrived on the scene, Detective Porter saw three black males standing near the corner. Detective Porter saw the defendant with a rifle in his hand. As the defendant ran off, the officers pursued and apprehended him.
Detective Porter went to the front side of the house to secure it until additional patrol units arrived. As he walked to the front of the house, Detective Porter saw another black male standing near the side of the house. This individual was detained for questioning. Detective Porter obtained permission to enter the house and found the rifle between mattresses in the master bedroom. Detective Porter identified the rifle introduced into evidence as the weapon he retrieved from the house.
As part of the state's case to prove the defendant had previously been convicted of a felony, H.B. Shaver testified he was the supervising agent for the defendant's probation. Mr. Shaver identified certified copies of the bill of information charging the defendant with possession with intent to distribute a Schedule II substance. Mr. Shaver also identified a certified copy of the court minutes of the proceedings placing the defendant on probation and a copy of the conditions of probation signed by the defendant and witnessed by Shaver on March 27, 1995.
The state did present testimony of two additional witnesses, Luciana Rene Young and Erica Young, but these individuals did not see the defendant with a weapon.
As the defense presented its case, the defendant testified that he had previously pled guilty to possession (Schedule II) with intent to distribute on March 15, 1995. On the date of the shooting, the defendant denied having *259 any type of firearm on his person and further claimed his arm was in a sling with an Ace Bandage around it. The defendant testified that he was walking his brother home from the Fina station after his younger brother had a fight with someone at the gas station. After passing the area where Mr. Young lived, the defendant stated he heard gunshots, but did not know who was shooting. As the defendant continued to walk with his brother, Officer Jeter exited a police car and told the defendant to lie down on the ground and eventually handcuffed him. Another officer arrested the defendant's younger brother.
During cross-examination, the defendant was questioned regarding a statement made to a detective three days after he was arrested in which he admitted having the rifle. The defendant alleged the detective stopped the tape during the interview and told him if he admitted passing the gun over the fence, the detective would talk to the judge to get him to go easy on the defendant.
As part of the state's rebuttal case, Detective Coffey testified he had not stopped the tape during the interview nor had he stated he would speak to a judge on behalf of the defendant in exchange for his statement of guilt.
It is submitted that the state presented sufficient evidence to convict the defendant of the charged offense. Several witnesses testified to seeing the defendant in possession of an SKS Chinese rifle. The witnesses identified state exhibit 1 as the weapon the defendant was carrying on the day of the shooting. The state also presented evidence and the defendant admitted that he had been convicted of possession (Schedule II) with intent to distribute [1]. The defendant pled guilty to the charges on March 15, 1995 and was sentenced on the same day. The instant offense occurred on September 15, 1995, well within the ten-year statutory time limitation for the defendant previous conviction to be a qualifying offense for the purposes of La.R.S. 14:95.1.
The defendant's argument that the state's witnesses presented conflicting testimony was an issue for the jury to assess in making credibility determinations and should not be disturbed by this court. Based on the verdict returned by the jury, it is obvious the jury chose to believe the testimony of the state's witnesses as opposed to the testimony of the defendant. The testimony of the witnesses presented sufficient evidence to convict the defendant of the charged offense.
Regarding the defendant's argument that there was not a motive for the shooting, it was not necessary that the state prove the defendant actually fired the weapon to obtain a conviction for the charged offense. Nevertheless, there were several witnesses who testified to actually seeing the defendant fire the rifle he had in his possession.
As the evidence presented during the trial was legally sufficient to support the defendant's conviction, the trial judge was correct in denying the defendant's motion for post judgment verdict of acquittal.
These assignments of error are without merit.
Assignment of error # 3: The honorable trial court erred by imposing an excessive sentence.
Assignment of error # 4: The honorable trial court erred by denying defendant's motion to reconsider sentence.
The defendant argues that the sentencing portion of La.R.S. 14:95.1 as it is applied violates his constitutional rights. The defendant claims the statute is a violation of his right to equal protection under the law and is grossly out of proportion as a penalty for the prohibited conduct. The defendant states that the sentencing portion of the statute was amended and became effective 30 days prior to the defendant being charged with the instant offense. Prior to the amendment, the sentencing range was three to ten years. The amended penalty range is 10-15 years. The defendant states it is "grossly unfair to think of the fact that an individual in the City of Shreveport arrested on an identical charge, under identical circumstances, but one month earlier would have faced a sentencing *260 range of 3-10." Additionally, the defendant alleges the sentence is constitutionally excessive and the trial judge could have imposed a less severe sentence with the amended sentencing range.
The state counters that the defendant failed to raise the constitutionality of the statute in the trial court and therefore, the issue is not properly before this court. In discussion of the argument, the state asserts that the statutory language of the statute does not discriminate or deny equal protection on its face. The state also contends the sentence is not excessive.
A motion to reconsider sentence shall set forth the specific grounds on which the motion is based. La.C.Cr.P. art. 881.1 A(2). Failure to include a specific ground on which the motion to reconsider sentence may be based shall preclude the defendant from raising an objection to the sentence on appeal or review. La.C.Cr.P. art. 881.1 D. The article only precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court at a point in the proceedings when the trial court was in a position to correct the deficiency. State v. Brantley, 28,542 (La. App.2d Cir. 8/21/96), 679 So.2d 472. When a defendant's motion for reconsideration urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993).
It is submitted that the defendant failed to raise the issue of the constitutionality of the sentencing portion of R.S. 14:95.1 in his motion for reconsideration of his sentence; therefore, he is now precluded from raising this issue on appeal. In considering the argument for the purposes of this discussion, it should be concluded that the argument is without merit.
The defendant's argument is that the sentencing portion of the statute was changed to allow increased penalties for the same crime and this change in the penalty violates the defendant's constitutional rights.
It is well settled in Louisiana jurisprudence that the determination and definition of acts which are punishable as crimes are purely legislative functions. State v. Taylor, 479 So.2d 339 (La.1985); State v. Rodriguez, 379 So.2d 1084 (La.1980). It is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. State v. Prestridge, 399 So.2d 564 (La.1981): State v. Hudson, 442 So.2d 735 (La.App. 1st Cir.1983).
The legislative authority to prescribe punishment for statutory crimes is plenary and its determination is vested with a presumption of constitutionality. State v. Mallery, 364 So.2d 1283 (La.1978), cert. den., 442 U.S. 940, 99 S.Ct. 2881, 61 L.Ed.2d 310 (1979); State v. Dazet, 378 So.2d 1369, 1374 (La.1979), cert. den., 449 U.S. 842, 101 S.Ct. 123, 66 L.Ed.2d 50 (1980).
The defendant's argument fails to rebut the presumption of constitutionality given to the sentencing authority of the legislative body in determining and setting the penalties for felony offenses. The fact that the defendant committed his crime some 30 days after the amended penalty statute became effective and was thus sentenced to a greater penalty does not in itself amount to a denial of due process or other constitutional violation against the defendant's rights. The law under which the defendant was sentenced was properly enacted by the legislature and the defendant has not shown that the law is unconstitutional as applied to him. This portion of the defendant's argument is without merit.
The second portion of the defendant's argument asserts that the sentence is excessive.
A trial court has wide discretion to sentence within statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25,583 (La.App.2d Cir. 1/19/94), 631 So.2d 555. In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show adequate consideration of the criteria set forth in La.C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688 (La.1983). The trial court is not required to list every *261 aggravating and mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, supra; State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991), writ denied, 604 So.2d 993 (La.1992). The articulation of the factual basis for the sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Remand is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So.2d 475 (La.1982). Important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
During the defendant's sentencing hearing, the trial judge cited various factors taken into consideration in determining the defendant's sentence. The trial judge stated he considered the defendant's age, his educational background, his family history, the defendant's past criminal record (convictions) and particularly the facts and circumstances surrounding the offense for which the defendant was convicted. The judge noted a particular concern was that the event occurred in a residential neighborhood.
The defendant's presentence investigation (PSI) indicates the defendant is a second felony offender with a juvenile record. The defendant completed the 10th grade prior to leaving school, and has not received a GED at the time the PSI was written. The defendant's only stated employment was for a period of approximately four months. At the time of the commission of the instant offense, the defendant was on probation for a previous drug offense and had been ordered to attend a drug treatment program. The defendant had been unsatisfactorily released from two drug treatment programs for failure to comply with the requirements of the programs, and the defendant had also tested positive for drug usage (marijuana) at least three times since being placed on probation. The record clearly indicates the trial judge adequately considered the appropriate criteria.
The second prong of the inquiry requires an examination of the circumstances of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
The defendant was sentenced to a midrange sentence of 13 years at hard labor with a $1,000 fine. The sentencing range for the charged offense is 10-15 years at hard labor with a $1,000 fine. Considering the fact that the defendant was on probation and had only been on probation for 6 months at the time the instant offense occurred, this sentence does not shock the sense of justice nor is it a needless infliction of pain and suffering. The trial judge did not abuse his discretion in determining this sentence; therefore, this court should not disturb the sentence on appeal.
These assignments of error are without merit.
Assignment of error # 5: The defendant respectfully requests that the record be inspected for any errors patent on its face.
The defendant's final assignment was a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 So.2d 1208 (La. 1993); State v. Bryant, 29,344 (La.App.2d Cir. 5/7/97), 694 So.2d 556. We have examined the record for error patent, La.C.Cr.P. art. 920(2), and found none.

CONCLUSION
For the foregoing reasons, it is recommended that the conviction and sentence of Daniel R. Washington be affirmed.
AFFIRMED.
NOTES
[1] La.R.S. 14:95.1 includes any violation of the Uniform Controlled Dangerous Substances Law (La.R.S. 40:961 et seq.) which is a felony as a qualifying offense for this statute.